**Affirmed and Opinion Filed August 20, 2013.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01495-CR

## JONATHAN BRUCE REED, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4
Dallas County, Texas
Trial Court Cause No. F81-01988-K

### OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Moseley

A jury convicted Jonathan Bruce Reed of the capital murder of Wanda Jean Wadle in the course of committing or attempting to commit burglary of a habitation. Wadle was murdered around noon on November 1, 1978. This appeal is from the third trial of the case.[1] After the State withdrew its intent to seek the death penalty, the trial court assessed a life sentence as required by statute.[2]

Reed brings two issues on appeal, arguing the trial court erred by admitting evidence of two extraneous offenses because the evidence did not satisfy the requirements of evidence rule

---

[1] The lengthy procedural history of this case is described in *State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 495–98 (Tex. Crim. App. 2011) (orig. proceeding).

[2] *See* Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. 2, § 2, sec. 12.31, 1973 Tex. Gen. Laws 1122, 1124 (amended) (current version at TEX. PENAL CODE ANN. § 12.31 (West 2011)).

404(b) and the risk of unfair prejudice substantially outweighed the probative value of the evidence under rule 403. *See* TEX. R. EVID. 404(b), 403. We conclude the trial court did not abuse its discretion by admitting the evidence under either rule and that any error in doing so did not affect Reed's substantial rights. Accordingly, we overrule Reed's issues and affirm the trial court's judgment.

## BACKGROUND

The complained of evidence was offered by the State on rebuttal. Following a hearing outside the presence of the jury, the trial court overruled Reed's objections and allowed Ruston Stapleton and Roxanne Willie Fry to testify about extraneous offenses. Before allowing Fry to testify, the trial court instructed the jury that the testimony was presented for the sole purpose of establishing the identity of Wadle's murderer and they could not consider the evidence for any purpose unless they found beyond a reasonable doubt the defendant committed the extraneous offense.

Stapleton testified on rebuttal that he and Reed were trying to burglarize an apartment when someone came to the door while they were trying to go in. Reed then told the person he was with maintenance and was there to check on the air conditioner. After they left the apartment, Stapleton told Reed that was quick thinking and Reed responded that he had done it before.

Fry testified that on December 16, 1978, she was asleep in her house and awoke to find a man she later identified as Reed naked in bed with her. He told her he had come to rob the house, but saw her in bed. Reed allowed her get up to get a drink of water. Fry got a large crystal beer mug and they sat on the couch for a while. Fry then hit Reed on the forehead with the mug and tried to escape. Reed grabbed her around the neck and covered her mouth and nose with his hand. He told her, "If you scream, I will break your f. . .ing neck."

Reed dragged her down the hallway to the bedroom with his hand around her neck and she fell to the floor unconscious. She awoke moments later and begged Reed not to kill her. Reed covered her head with her robe and maneuvered her into the bedroom where he raped her. Afterwards, Reed got dressed and told her to stay in bed because he was coming back. He then left. After waiting several minutes, Fry ran to a neighbor's house and called police. Fry testified Reed took a necklace from her house. Reed was arrested later that evening.

The record contains detailed evidence regarding Wadle's murder. Wadle's roommate, Kimberly Pursley, returned to their shared apartment after having lunch with her father on November 1, 1978. As she entered the apartment, Pursley heard a man's voice from Wadle's bedroom say, "Don't come in here. Stay out there. Don't come in." A few moments later, a man stepped out of the bedroom and snapped closed a knife sheath on his belt. The man said he was with maintenance and came to check the air conditioning filter. Pursley looked into the bedroom and saw Wadle's nude body on the floor of the bedroom. The man grabbed Pursley and threw her to the floor of the living room on her stomach, saying "Don't move or I'll break your f. . .ing neck." The man gagged Pursley, tied her hands behind her back, and covered her head with an apron. The man walked around the apartment for a while before asking Pursley if she had any money. She nodded and he took $20 from her purse.

The man walked around the apartment for a time, then returned to Pursley, straddled her with his legs, and began choking her with both of his hands. She feigned unconsciousness. He finally stopped choking her and left.

Pursley managed to free herself and checked on Wadle. Wadle was lying naked on her back with her legs spread. Her hands were tied behind her back with a telephone cord. Wadle had been strangled with a plastic bag, belt, and a telephone cord tied tightly around her neck. Pursley ran outside and screamed for help. Wadle was taken to the hospital where she died nine

days later without regaining consciousness.

On December 16, 1978, officer George Kleinmeier was called to Fry's address approximately six miles from where Wadle was murdered. He took Reed into custody and put him in the backseat of the squad car. While taking down information, Kleinmeier recognized Reed as the same person in a composite sketch of the suspect in the Wadle murder. The composite sketch had been prepared based on Pursley's description.

One of Wadle's neighbors, Micki Flanagan, testified Reed knocked on her door the day of the murder and said he was with maintenance and was checking the air conditioning filters. Flanagan, Pursley, and another resident of apartments identified Reed in a live lineup after his arrest.

**STANDARD OF REVIEW AND APPLICABLE LAW**

We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.* A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1991) (op. on reh'g). We uphold the trial court's ruling if it was correct on any theory reasonably supported by the evidence and applicable to the case. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Evidence of extraneous offenses is not admissible to prove that a defendant acted in conformity with a bad character. *See* TEX. R. EVID. 404(b). However, extraneous-offense evidence may be admissible when it has relevance apart from character conformity, such as to

show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*; *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). An extraneous offense may be admissible to show identity only when identity is at issue in the case. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). Whether extraneous-offense evidence has relevance apart from character conformity is a question for the trial court. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

When the extraneous offense is offered to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's "distinctive and idiosyncratic manner of committing criminal acts." *Page*, 213 S.W.3d at 336 (citations omitted). The evidence is admissible to prove identity when the common characteristics of each offense are so unusual as to act as the defendant's signature. *Id.* The signature must be apparent from a comparison of the circumstances of each case. *Id.* However, the law does not "require extraneous-offense evidence to be completely identical to the charged offense to be admissible to prove identity." *Id.* at 338. "No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008).

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. The rule favors admission of relevant evidence and the presumption is that relevant evidence will be more probative than prejudicial. *Martinez*, 327 S.W.3d at 737. Rule 403 does not require exclusion of evidence simply because it creates prejudice; "the prejudice must be

'unfair.'" *Id.* The danger of unfair prejudice exists only when the evidence has the potential to impress the jury in some irrational but indelible way. *Id.*; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (discussing factors involved in rule 403 analysis).

Thus, extraneous-offense evidence is admissible under both rules 403 and 404(b) if the evidence (1) is relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character and (2) its probative value is not substantially outweighed by the danger of unfair prejudice. *See Page*, 213 S.W.3d at 336.

## ANALYSIS

Identity was clearly at issue in this case. Reed challenged identity through vigorous cross-examination of the State's witnesses, expert testimony that Reed was excluded from DNA found on Wadle's pubic hair, expert testimony on eyewitness testimony, and evidence of an alibi defense. The State offered the extraneous-offense evidence in rebuttal on the basis that it was relevant to show identity rather than character conformity.

Both parties submitted trial briefs to the court on the admissibility of the evidence and the trial court conducted a hearing outside the presence of the jury where the court heard the proffered testimony and the legal arguments of the parties. The trial court overruled Reed's objections to the evidence under rules 404(b) and 403.

Reed argues the evidence, particularly the Fry rape evidence, did not show the "Mark of Zorro" or modus operandi necessary for admission to prove identity. The same argument was raised in the trial court and fully considered by the trial judge. Based on the law and the evidence presented, the trial court determined the circumstances of the extraneous offenses and the present offense were sufficiently similar to allow admission. The trial court further determined, after considering the law, the evidence, and the arguments of the parties, that the probative value of the evidence was not substantially outweighed by the danger of unfair

prejudice. On appeal, Reed has not shown either of these rulings was outside the zone of reasonable disagreement. The trial court clearly acted with reference to guiding rules and principles and was not arbitrary or unreasonable in its decision.

The State argued the numerous similarities between the offenses marked the crimes as Reed's modus operandi. The State noted several similarities between the Fry rape, the Pursley assault, and the Wadle murder. The offenses were committed about six miles apart and within six months of each other. The victims were all young females alone in their residences. Both of the surviving victims identified Reed as their attacker. They both said he threatened to break their necks. All were strangled to some degree. All had their heads covered. In both incidents, the perpetrator took property from the residences.

Certainly there were differences between the offenses, but Reed has not shown the trial court acted unreasonably or without reference to guiding rules and principles in concluding to differences did not require exclusion of the evidence. *See Page*, 213 S.W.3d at 338 (offenses need not be completely identical for extraneous offense to be admissible). Considering all the similarities and differences in the offenses and the relevant legal principles, we cannot say the trial court's decision was outside the zone of reasonable disagreement. *See id.*

The trial court also concluded the probative value of Fry's evidence was not substantially outweighed by the potential for unfair prejudice. Although the evidence was offered in rebuttal, it was compelling evidence of Reed's identity. The evidence was sexual in nature, but unlikely to affect the jury in an irrational manner because of the definite sexual characteristics of Wadle's murder. The trial court weighed this factor and instructed the jury before they heard the testimony and in the jury charge that they could consider it only for identity and only if they believed beyond a reasonable doubt Reed committed the offense. The time required for the testimony was not substantial in this trial and the State needed the evidence to respond to the

identity issue. We conclude the trial court's decision was within the zone of reasonable disagreement and was not an abuse of discretion. *See Martinez*, 327 S.W.3d at 737.

Similarly, the trial court did not abuse its discretion by admitting Stapleton's testimony. The use of the maintenance-man ruse to explain Reed's presence inside Wadle's apartment and at the door of Flanagan's apartment before the murder is substantially similar to the Reed's use of the ruse to explain his presence at the attempted burglary described by Stapleton.

Nor was Stapleton's evidence unfairly prejudicial. Stapleton's rebuttal testimony was very brief and had little danger of impacting the jury in some irrational manner. While the State's need for the testimony and its strength were not great, we cannot say the trial court abused its discretion by admitting it. *See id.*

Even if the record showed the trial court abused its discretion by admitting the extraneous-offense evidence, such error is not reversible unless it affected Reed's substantial rights. *See* TEX. R. APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A defendant's substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (citations omitted).

The State emphasized Fry's testimony during closing arguments and referred to Reed's regular job as "burglar." However, the record includes Pursley's testimony identifying Reed as the man who attacked her after walking out of Wadle's bedroom, Flanagan's testimony identifying Reed as the man who came to her apartment shortly before Wadle's murder, and Phil Hardin's testimony identifying Reed as a man he saw at Wadle's apartment complex around noon the day of the murder. All three identified Reed in the lineup following his arrest and during the trial proceedings. Ken Ezelle, the apartment maintenance man, testified he saw Reed

shortly before 1:00 p.m. on November 1, 1978 after he heard a scream for help, and identified Reed at a prior trial. Kleinmeier recognized Reed from the composite sketch after the arrest. Both the sketch and a photograph of Reed on the night of his arrest were admitted in evidence and viewed by the jury.

After examining the record as a whole, we have a fair assurance that the error, if any, did not influence the jury or had but a slight effect. *See* TEX. R. APP. P. 44.2(b).

## CONCLUSION

We conclude the trial court's decision to admit the extraneous-offense evidence was not an abuse of discretion. *See Page*, 313 S.W.3d at 338. However, even if the trial court erred by admitting the evidence, the error did not affect Reed's substantial rights and must be disregarded. TEX. R. APP. P. 44.2(b). We overrule Reed's two issues.

We affirm the trial court's judgment.

/Jim Moseley/
JIM MOSELEY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
111495F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JONATHAN BRUCE REED, Appellant

No. 05-11-01495-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F81-01988-K.
Opinion delivered by Justice Moseley.
Justices Bridges and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 20th day of August, 2013.


/Jim Moseley/
JIM MOSELEY
JUSTICE