IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-1744-05, PD-1745-05






CHARLIE MELVIN PAGE, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


GALVESTON COUNTY





 Johnson, J. delivered the opinion of the unanimous Court.

 

O P I N I O N 


 

 A grand jury returned two separate indictments against appellant, each arising from the same
incident. The first indictment charged appellant with sexual assault in violation of Tex. Penal
Code § 22.011, while the second indictment charged appellant with impersonating a public servant
in violation of Tex. Penal Code § 37.11. Appellant plead not guilty to both charges, but a jury
convicted him. On appeal, the court of appeals found that the trial court abused its discretion in
admitting extraneous offenses into evidence and reversed appellant's conviction. The state
petitioned for discretionary review, and we granted review on the state's sole ground. (1) We reverse
the judgment of the court of appeals.

 The state presented evidence at the guilt phase of the trial that, in December 1997, appellant
posed as a police officer and threatened the complainant, a prostitute, with arrest unless she
performed oral sex on him. The complainant reluctantly complied with this request and, several days
later, reported the incident to the Galveston Police Department. The state also called two other
witnesses, Erica Cavender and Angelina Edenfield, during the guilt phase of the trial to testify about
two extraneous offenses committed by appellant. Appellant objected to the testimony based on Tex.
R. Evid. 403 and 404(b), (2) indicating that identity was not raised as an issue. Citing Siqueiros v.
State, (3) the state argued that the extraneous offense testimony was admissible because the
complainant's testimony about appellant's physical description, specifically his weight, was
impeached on cross-examination. (4) The trial court overruled appellant's objection and admitted the
extraneous offense testimony to prove the issue of identity. 

 The charges were litigated in a single trial, and a jury convicted appellant of both offenses. 
Appellant was sentenced to seven years' imprisonment in the Texas Department of Criminal
Justice-Correctional Institutions Division on the sexual-assault charge and five years' imprisonment
on the charge of impersonating a public servant.

 Appellant appealed, arguing that the trial court had violated Tex. R. Evid. 403 and 404(b)
by admitting the extraneous-offense evidence. Page v. State, 88 S.W.3d 755 (Tex. App.- Corpus
Christi 2002), rev'd, 137 S.W.3d 75 (Tex. Crim. App. 2004)(Page I). The court of appeals, relying
on Webb v. State, (5) Lane v. State, (6) and Siqueiros v. State, found that identity was not at issue or in
dispute because the complainant was not impeached on cross-examination regarding her
identification of appellant. In the alternative, the court of appeals concluded that, even if the
complainant was impeached, the impeachment was not related to a "material detail" of her
identification of appellant because appellant's weight was less significant when compared to the
other details of appellant's description. The court of appeals subsequently conducted a harm analysis
and concluded that the extraneous-offense evidence had a "substantial and injurious effect or
influence" on the jury's decision. 

 This Court reversed the court of appeals and found that defense counsel's cross-examination
of the complainant raised the issue of identity. Page v. State, 137 S.W.3d 75 (Tex. Crim. App.
2004)(Page II). "Whether the challenge was to [the complainant's] capacity to observe (i.e., she was
mistaken) or her truthfulness (i.e., she was lying), or both, the questions implied that the
identification of appellant was not trustworthy." Id. at 78. On remand, the court of appeals again
reversed the judgment of the trial court and held that the extraneous offenses were not sufficiently
similar to identify either offense as the "signature" of appellant. Page v. State, 170 S.W.3d 829
(Tex. App- Corpus Christi 2005)(Page III). Extraneous Offenses and Identity

 Tex. R. Evid. 404(b) states that "evidence of other crimes, wrongs, or acts is not admissible
to prove the character of a person in order to show action in conformity therewith." Johnston v. State,
145 S.W.3d 215, 219 (Tex. Crim. App. 2004). Tex. R. Evid. 403 provides that even relevant
evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury . . .." "'Relevant evidence' means evidence
having any tendency to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the evidence." Tex. R. Evid.
401. "Whether extraneous offense evidence has relevance apart from character conformity . . . is a
question for the trial court." Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

 However, Rule 404(b) also provides that extraneous-offense evidence may be admissible for
other purposes, such as showing identity. (7) Johnston, 145 S.W.3d at 219. An extraneous offense may
be admissible to show identity only when identity is at issue in the case. Lane v. State, 933 S.W.2d
504, 519 (Tex. Crim. App. 1996)(citing Moore v. State, 700 S.W.2d 193, 201 (Tex. Crim. App.
1985)). In Page II, this Court found that the issue of identity may be raised by a defendant during
cross-examination of the state's witnesses and that in this case, appellant's identity was at issue after
defense counsel cross-examined the complainant about appellant's weight. Page II, 137 S.W.3d at
78-9 (citing Siqueiros, 685 S.W.2d at 71).

 Because appellant's identity was held in Page II to be at issue, we need not readdress that
question and now turn our attention to whether the extraneous evidence was admissible. Merely
raising the issue of identity does not automatically render the extraneous evidence admissible. 
Extraneous-offense evidence is admissible under both Rules 403 and 404(b) if that evidence satisfies
a two-pronged test: (1) whether the extraneous-offense evidence is relevant to a fact of consequence
in the case aside from its tendency to show action in conformity with character; and (2) whether the
probative value of the evidence is not substantially outweighed by unfair prejudice. Johnston, 145
S.W.3d at 220. 

 When the extraneous offense is introduced to prove identity by comparing common
characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's
"distinctive and idiosyncratic manner of committing criminal acts." Martin v. State, 173 S.W.3d
463, 468 (Tex. Crim. App. 2005)(quoting Owens v. State, 827 S.W.2d 911, 915 (Tex. Crim. App.
1992)). Such extraneous-offense evidence is admissible to prove identity when the common
characteristics of each offense are so unusual as to act as the defendant's "signature." Taylor v.
State, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996). The signature must be apparent from a
comparison of the circumstances in both cases. (8) Bishop v. State, 869 S.W.2d 342, 346 (Tex. Crim.
App. 1993).

The Evidence

 In this case, the complainant testified that she was working as a prostitute in the sea-wall area
of Galveston in 1997 when appellant, driving a maroon four-door car, approached her. Appellant
showed a badge, identified himself as a police officer, and instructed the complainant to get into the
front seat of the car. Appellant then drove toward the beach before stopping to remove a police radio
from the trunk of the car and put it into the back seat. Appellant told the complainant that, since his
shift was about to end, he did not want to be bothered with filling out the necessary paperwork to
complete her arrest. He stopped the vehicle a second time and stated that the complainant would
have to perform oral sex on him or go to jail. 

 The complainant reluctantly complied with appellant's request, briefly performed oral sex
on appellant, and then stopped, telling him that he could take her to jail if he wished. Appellant
dropped the complainant off a few blocks from the beach, warned her to stay off of the streets, and
threatened her with arrest if she was seen on the streets again. The complainant recorded the license
plate number on the car after getting out of the car. 

 Erica Cavender testified that, in the spring of 1997, she was working as a prostitute in the
sea-wall area of Galveston when appellant, driving a maroon car, approached her. Appellant asked
Cavender to perform oral sex on him for a small amount of money, but she declined. Appellant
drove away, only to return minutes later. During this second encounter, Cavender testified that she
heard what sounded like a police radio in the back seat of appellant's car and that appellant identified
himself as a police officer and threatened her with arrest for prostitution. Cavender again declined
appellant's request for oral sex before walking away.

 Angelina Edenfield testified that she was working as a prostitute in the sea-wall area of
Galveston during Labor Day 1997. She further testified that appellant, driving a maroon car,
approached her. After a short encounter, during which appellant and Edenfield fondled each other
and appellant told her that he was not a police officer, Edenfield got into appellant's car. As
appellant drove toward the beach, he displayed a badge, indicated that he was, in fact, a police
officer, and that he was conducting a sting operation. Edenfield testified that she also heard what
sounded like a police radio in the back seat of the car. Appellant offered to make a "deal" with
Edenfield, promising not to arrest her if she performed sexual acts on him. At that point, Edenfield
asked to discuss payment for possible sexual services or be arrested. Appellant became angry and
struck Edenfield in the face with his fist before forcing Edenfield to engage in sexual intercourse and
perform oral sex. Appellant subsequently returned Edenfield to the area where the encounter began.

Analysis

 The standard of review for a trial court's ruling under the Rules of Evidence is abuse of
discretion. Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). "If the ruling was
correct on any theory of law applicable to the case, in light of what was before the trial court at the
time the ruling was made, then we must uphold the judgment." Id. Appellate courts will uphold a
trial court's ruling on the admissibility of evidence as long as the trial court's ruling was at least
within the "zone of reasonable disagreement." Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1991)(op. on reh'g).

 A thorough reading of the trial-court testimony of the complainant, Cavender, and Edenfield
shows that the three incidents all occurred in mid-1997 and had the following similarities: (1) each
woman was working as a prostitute in the sea-wall area of Galveston; (2) each woman was
approached by a man driving a maroon car; (3) each woman identified appellant as the driver of the
maroon car; (4) appellant approached each woman in the sea-wall area of Galveston; (5) appellant
identified himself to each woman as a police officer; (6) each woman heard what sounded like a
police radio in the back seat of appellant's car; (7) appellant threatened to arrest each woman for
prostitution; and (8) appellant solicited each woman for oral sex.

 The court of appeals, in an effort to distinguish the charged offense from the extraneous
offenses, focused on the generic traits of a prostitute/client encounter (9) and on the small differences
between the encounters. (10) After examining the three incidents individually and together, the court
of appeals concluded that "[w]hile the facts of the Edenfield incident are closer to the charged
offense than the Cavender incident, the decisional authority of this state confirms that close is simply
not enough." Page III, 170 S.W.3d at 834. While the court of appeals is correct in noting that "close
is simply not enough," the case law in this jurisdiction does not require extraneous-offense evidence
to be completely identical to the charged offense to be admissible to prove identity. Here, a
comparison of the charged offense and the extraneous offenses shows at least eight similarities. 

 We conclude, therefore, that the facts of the charged offense and the extraneous offenses
show a pattern of conduct sufficiently distinctive to constitute a "signature," a distinctive and
idiosyncratic manner of committing criminal acts, and thereby qualify as an exception to the general
rule precluding the admission of extraneous-offense evidence. Consequently, the trial court's
decision to allow the extraneous-offense evidence is within the zone of reasonable disagreement and
does not constitute an abuse of discretion. The admission of the extraneous-offense evidence did
not violate Tex. R. Evid. 403 or 404(b).

 We sustain the state's sole ground for review, reverse the judgment of the court of appeals,
and remand this cause to the court of appeals for proceedings consistent with this opinion.


Delivered: December 20, 2006

Publish


 






 
1. "
The Court of Appeals for the Thirteenth District of Texas erred in its finding that the trial court abused
its discretion in admitting extraneous offenses into evidence. Such finding is in conflict with important decisions of
this Court of Criminal Appeals."
2. Rule 403 Exclusion of Relevant Evidence on Special Grounds

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.


 Rule 404 Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes

 * * * * 

 (b) Other Crimes, Wrongs or Acts - Evidence of other crimes, wrongs or acts is not admissible to
prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for
other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given
in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same
transaction.
3. 685 S.W.2d 68 (Tex. Crim. App. 1985).
4. The state also claimed that defense counsel impeached the complainant on cross-examination regarding
her past drug use. Additionally, the state suggested that the complainant's testimony was further impeached by
defense counsel's questions to Officer Richard Kershaw concerning a possibly tainted photo lineup in which
appellant was identified as the offender. 
5. 36 S.W.3d 164 (Tex. App.- Houston [14th Dist.] 2000, pet. ref'd).
6. 933 S.W.2d 504 (Tex. Crim. App. 1996).
7. This Court has, in the past, used a variety of terms when discussing the "identity" exception to the general
rule precluding the admissibility of extraneous-offense evidence. See Martin v. State, 173 S.W.3d 463 (Tex. Crim.
App. 2005)(using the terms identity and modus operandi synonymously); Johnston v. State, 145 S.W.3d 215 (Tex.
Crim. App. 2004)(using the terms identity, system, signature, modus operandi, and methodology synonymously);
Bishop v. State, 869 S.W.2d 342 (Tex. Crim. App. 1993)(using the terms identity, signature, and handiwork
synonymously).
8. Is introduced to show a "signature, it Cf. Ford v. State, 484 S.W.2d 727 (Tex. Crim. App.
1972)(finding extraneous-offense evidence inadmissible to prove identity because a comparison of the charged
offense and the extraneous offenses showed insufficient distinguishing common characteristics). 
9. The court of appeals elected not to give weight to the fact that all three incidents occurred in the sea-wall
area of Galveston. The court of appeals concluded that " it is customary after soliciting a prostitute in a public area,
for the couple to drive to an isolated area to complete the sex act." Page III, 170 S.W.3d at 834. While it is true that
certain crimes may have common similarities, the facts of the charged offense and the extraneous offenses are more
distinctive than a generic prostitute/client encounter.
10. The court of appeals notes that there was no offer to exchange money for sex in the charged offense, nor
was any sex act committed in the Cavender incident. Furthermore, the court of appeals points out that appellant
fondled Edenfield and hit her prior to having sex, but that he did not fondle or harm the other women. Finally, the
court of appeals indicates that in the Edenfield incident, unlike the others, appellant failed to immediately identify
himself as a police officer. Page III, 170 S.W.3d at 834. 

 We note that no sex act occurred in the Cavender incident because Cavender did not get into the car with
appellant and twice declined his requests for sex. Additionally, Edenfield testified that she asked appellant to touch
her as part of a "little test" that she conducted to ensure that potential clients were not law-enforcement officers. 
Finally, the court of appeals heavily emphasized the timing of the identification over the fact that appellant identified
himself as a police officer before demanding sex.