Opinion issued August 22, 2013



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-11-01086-CR

————————————

**JOHN LEONARD MORIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1275289**

---

## MEMORANDUM OPINION

The jury found John Leonard Morin guilty of felony arson and made a finding that he had used fire as a deadly weapon. After Morin pleaded true to two enhancement paragraphs, the trial court sentenced him to forty years' confinement.

In a single issue, Morin contends that the trial court abused its discretion in admitting evidence of two extraneous offenses at trial. We affirm.

## Background

In 2007, Efrain Mendoza hired Morin, whom he had known for nearly twenty years, to work at his vehicle detailing business. At the time, Morin lived a few doors away at a nearby garage.

Over the course of the next three months, Morin became dissatisfied with his job, demanded to be paid more, and told Mendoza "one day your cars [are] going to be burned," a threat overheard by two other employees. Morin later quit his job.

On October 19, 2007, Morin repeatedly called Mendoza's home at 3:30 a.m. to tell him that cars at his business were on fire. Arson investigators later determined that the origin of the fire was Mendoza's van.

Several weeks thereafter, Mendoza saw Morin drive by the business and take photographs. Mendoza testified that Morin angrily told him, "I'm not going to be happy till [sic] you stay out of this place." When Mendoza told Morin that he knew he had started the fire, Morin challenged Mendoza to prove it. Following the investigation, Morin was charged with arson.[1]

---

[1] The indictment contained two enhancement paragraphs for the felony offenses of burglary and arson.

Morin's case came to trial in January 2011, but the jury deadlocked 10-2 in favor of acquittal and the court declared a mistrial. In the second trial (October 2011), the State sought to admit evidence of three extraneous uncharged offenses. Defense counsel objected that there was no evidence linking Morin to the extraneous uncharged offenses. The trial withheld ruling on the motion until after the presentation of testimony. On the trial's last day, the court ruled that the extraneous offense evidence was admissible, gave (at defense counsel's request) a limiting instruction prior to the State's introduction of the extraneous evidence, and included an extraneous offense instruction in the jury charge.

The first witness, Mauricio Vega, testified that in 2006 he owned a red Chevrolet pick-up that he occasionally parked in front of a storage facility in which he stored his work tools. Morin, who worked at the storage facility, argued with Vega several times telling him that he could not park his truck on or in front of the facility. While parked in front of the storage facility in the early morning hours of October 9, 2006, Vega's truck was set on fire. On cross-examination, Vega testified that he did not report the fire at the time, and that he did not know who started it.

The second witness, Eugenio Carola, lived and worked at another storage facility in close proximity to the first and, in 2006, hired Morin to knock out some walls at the facility. Carola remembered that Morin had a problem with where

3

Vega parked his truck. Carola typically parked his van in the driveway at the back of the facility in front of the unit where he lived. Carola testified that, on several occasions, Morin insisted that he move his van from the driveway. One evening, after Carola refused to move the van, Morin told him, "I can't promise you what's going to happen."

In the early morning hours of October 14, 2006—the day after Morin's statement—Carola's van was set on fire. When Carola ran out of his unit and discovered the fire, he heard a door slam shut at the other end of the facility where Morin lived. Carola testified that while he and another employee were trying to put out the fire, Morin ran up to them and asked what had happened. According to Carola, Morin was salivating and acting as if the fire excited him. When the firefighters arrived, Morin told them that Carola had set the fire. Carola testified that when he asked Morin a few days later why he had set the fires, Morin replied, "because I can."[2]

## Discussion

In his sole issue, Morin complains that the trial court abused its discretion in granting the State's motion to introduce evidence of extraneous offenses. Specifically, Morin contends that the trial court erred because (1) the extraneous evidence was not relevant to any issue under Texas Rule of Evidence 404(b), and

---

[2] Although the State identified three extraneous offenses in its motion and brief, it sought admission of only two of them at trial.

4

(2) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Rule 403. The State argues that the extraneous offense evidence was admissible to prove Morin's identity, and that its probative value outweighed any danger of unfair prejudice.

A trial court's decision to admit or exclude evidence of extraneous conduct is reviewed for abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *See id.* at 343–44. A trial court's ruling is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* at 344.

## A. Rule 404(b)

Under Texas Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* A party may introduce evidence of an extraneous offense if such evidence logically serves to

make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).

Texas Penal Code section 28.02 provides, in relevant part, as follows: "A person commits an offense if the person starts a fire . . . with intent to destroy or damage . . . any . . . vehicle . . . knowing that it is located on property belonging to another . . . or, when the person is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another." TEX. PENAL CODE ANN. § 28.02(a)(2)(D), (F) (West 2012). In his brief, Morin acknowledges that "the primary issue was whether [he] was the person who set the fire" to Mendoza's van. Thus, an elemental fact—Morin's identity—was placed at issue at trial. *See Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (noting that extraneous offense evidence may be admissible under Rule 404(b) to show identity only when identity is at issue).

When an extraneous offense is introduced to prove identity, "it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Id.* (quoting *Martin*, 173 S.W.3d at 468). Extraneous offense evidence is admissible to prove identity "when the common characteristics of each offense are so unusual as to act as the defendant's 'signature.'" *Page*, 213 S.W.3d at 336 (quoting *Taylor v. State*,

920 S.W.2d 319, 322 (Tex. Crim. App. 1996)); *see also Russell v. State*, 113 S.W.3d 530, 541 (Tex. App.—Forth Worth 2003, pet. ref'd) ("[T]o be admissible to show identity, an extraneous offense must be so similar to the charged offense as to *mark* the offenses as the defendant's handiwork.") (emphasis in original) (quotation omitted). The "signature" must be apparent from a comparison of the circumstances in both cases. *Page*, 213 S.W.3d at 336. "Without a high degree of similarity, the probative value of the extraneous offense evidence is outweighed by its prejudicial effect." *Jabari v. State*, 273 S.W.3d 745, 752 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In reviewing the trial court's determination, we consider the specific characteristics of the offenses and the time interval between them. *See Jabari*, 273 S.W.3d at 752. "Sufficient similarity may be shown by proximity in time and place *or* by a common mode of committing the offenses." *Id*.

Here, the record reveals that the three offenses occurred within one year of each other[3] and had the following similarities: (1) all three involved vehicle fires; (2) each of the vehicles' owners knew Morin; (3) the fires occurred in the same neighborhood; (4) the fires occurred on or near the property where Morin lived or

---

[3] There is no express time limit imposed by Rule 404(b). *See Prince v. State*, 192 S.W.3d 49, 55-56 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Appellate courts have found evidence of extraneous offenses to be admissible even though committed as much as ten years after the charged offense. *See id.* (ten years); *Hernandez v. State*, 203 S.W.3d 477, 479–81 (Tex. App.—Waco 2006, pet. ref'd) (eight years); *Thomas v. State*, 126 S.W.3d 138, 146 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (eleven months).

worked; (5) the fires were set in the early morning hours; (6) all three fires occurred following a dispute between Morin and the vehicles' owners; and (7) in each instance, Morin had bullied the owner or threatened to destroy his vehicle. Although the details of the offenses differed in some respects, Texas law does not require extraneous offense evidence to be completely identical to the charged offense in order to be admissible to prove identity. *See Page*, 213 S.W.3d at 338. Here, the similarities in the proximity of time and place, and the mode of commission of the three offenses constitute sufficiently distinguishing characteristics such that the State's introduction of the extraneous offenses to prove Morin's identity is permissible. *See Davis v. State*, 180 S.W.3d 277, 285 (Tex. App.—Texarkana 2005, no pet.) (finding extraneous offense evidence relevant to prove identity of assailant where attacks occurred at same time of night and within blocks of one another, and assailant wore same clothing in both attacks).

## B. Rule 403

Even when the admission of extraneous offense evidence is permissible under Rule 404(b), we must still determine whether the probative value of the offense is substantially outweighed by the danger of unfair prejudice under Rule 403 by considering: (1) the strength of the extraneous evidence to make a fact of consequence more or less probable; (2) the potential of the extraneous offense to impress the jury in some irrational but indelible way; (3) the time during trial that

8

the State needed to develop evidence of the extraneous offense; and (4) the State's need for the extraneous offense evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). We uphold the trial court's ruling on a Rule 403 balancing test, whether explicit or implied, if it is within the zone of reasonable disagreement. *Jabari*, 273 S.W.3d at 753.

"Probative value" refers to "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation." *Gigliobianco*, 210 S.W.3d at 641. Here, we determined that the extraneous offense evidence is probative of an element of the charged offense, identity. Further, the evidence addressed the similarities of the fires involved. Because this evidence makes Morin's identity as the arsonist more probable, this factor weighs in favor of admissibility. *Blackwell*, 193 S.W.3d at 15.

We then examine the extraneous evidence "for its potential to impress the jury in some irrational but indelible way." *Id.* To avoid any impermissible inference of character conformity, a limiting instruction is given, as was done here when, prior to the presentment of the extraneous evidence, the trial court orally admonished the jury that it "may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with the offense, if any,

9

alleged against him in the indictment and for no other purpose." The jury charge, too, further expressly instructed the jury to consider the extraneous offense evidence only in determining the issues enumerated in Rule 404(b). *See id.* (approving jury instruction limiting jury's reliance on extraneous offense evidence to issues enumerated in 404(b)). Because the jury was provided with these express written and oral instructions limiting its consideration of the extraneous offense evidence, we conclude that this factor weighs in favor of admissibility.

With regard to the third factor, we consider the time that the State needed to develop evidence of the extraneous offenses. Here, roughly twenty-six pages of the approximately 372 pages (or seven percent) of the testimony during the guilt and innocence phase of the trial involved the presentation of the extraneous offense evidence. This factor weighs in favor of admissibility.

Finally, the State's need for the extraneous offense evidence in this case was considerable. Given Morin's defensive theory that he did not set the fire, the issue of Morin's identity was central to the State's case. The State had no witnesses to the ignition of the fire. *See AllState Texas Lloyds v. Potter*, 30 S.W.3d 658, 660 (Tex. App.—Texarkana 2000, no pet.) (noting that "arson may be proved by circumstantial evidence because it is ordinarily conceived and executed in secrecy."). Indeed, absent the extraneous offense evidence at the first trial, the jury

deadlocked. In light of such facts, the State's need for the extraneous offense evidence was high.

Balancing all of the factors, we conclude that the trial court did not abuse its discretion in determining the extraneous offense evidence was not substantially more prejudicial than probative under Rule 403. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) ("[Rule 403] envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'"). As such, we overrule Morin's issue.

## Conclusion

We affirm the judgment of the trial court.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11