ACCEPTED
01-14-00902-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/30/2015 1:55:26 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00902-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/30/2015 1:55:26 PM

CHRISTOPHER A. PRINE
Clerk

————————◆————————

## No. 1399343

In the 230th District Court
Of Harris County, Texas

————————◆————————

## KENNETH ALLEN ROSS
*Appellant*

v.

## THE STATE OF TEXAS
*Appellee*

————————◆————————

State's Appellate Brief

————————◆————————

**Clinton A. Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin St., Suite 600
Houston, Texas 77006
Telephone: 713.755.5826

**Devon Anderson**
District Attorney
Harris County, Texas

**Sarah Roberts**
**Lisa Calligan**
Assistant District Attorneys
Harris County, Texas

Oral Argument Not Requested

## Statement Regarding Oral Argument

The appellant requested oral argument, though he gave no particular reason why. The State believes that the briefs in this case adequately apprise this Court of the issues and the law, and any marginal benefit from oral argument does not justify the considerable amount of time that preparation for oral argument requires of the parties and the Court. The State does not request oral argument.

## Identification of the Parties

Counsel for the State:

      Devon Anderson
          — District Attorney of Harris County

      Sarah Roberts & Lisa Calligan
          — Assistant District Attorneys at trial

      Clinton A. Morgan
          — Assistant District Attorney on appeal

Appellant:

      Kenneth Allen Ross

Counsel for the Appellant:

      Danny Easterling
          — Counsel at trial

      Mandy Miller
          — Counsel on appeal

Trial Judges:

      Brad Hart
          — Presiding judges

# Table of Contents

Statement Regarding Oral Argument .................................................. i

Identification of the Parties ............................................................ ii

Table of Contents .......................................................................... iii

Index of Authorities ........................................................................v

Statement of the Case ......................................................................1

Statement of Facts ...........................................................................1

Summary of the Argument ..............................................................3

Reply to Point One .........................................................................4

    Strong modus-operandi evidence from two other robberies committed by the appellant, combined with a tentative eyewitness identification, are sufficient to allow a rational factfinder to find, beyond a reasonable doubt, that the appellant committed a third robbery that was introduced as an extraneous offense in the punishment phase. ............................................................................. 4

    I.    Trial Proceedings ........................................................................ 4

        A.    The June 21st Robbery ............................................................ 4

        B.    The Appellant's Request to Strike ....................................... 6

        C.    The June 3rd Robbery ............................................................ 8

    II.    Standard of Review: A trial court's decision to admit evidence of an extraneous offense in the punishment phase is reviewed only for an abuse of discretion. ............................................................... 9

    III.    Argument ................................................................................ 10

        A.    The evidence at trial was sufficient to show, beyond a reasonable doubt, that the appellant committed the June 21st robbery ........................................................................................ 10

        B.    Even if the trial court erred, the repeated instructions to the jury to disregard any extraneous offense not proven beyond a reasonable doubt cured the error. ........................................... 13

Conclusion ................................................................................. 16

Certificate of Compliance and Service........................................... 17

Appendix:State's Exhibits 28 & 57

# Index of Authorities

## Cases

*Apolinar v. State*
   106 S.W.3d 407 (Tex. App.—
   Houston [1st Dist.] 2003), aff'd, 155 S.W.3d 184 (Tex. Crim. App.
   2005) ......................................................................................................... 14

*Colburn v. State*
   966 S.W.2d 511 (Tex. Crim. App. 1998) ............................................. 14

*Martin v. State*
   173 S.W.3d 463 (Tex. Crim. App. 2005) ............................................. 11

*Page v. State*
   213 S.W.3d 332 (Tex. Crim. App. 2006) ............................................. 10

*Thompson v. State*
   4 S.W.3d 884 (Tex. App.—
   Houston [1st Dist.] 1999, pet. ref'd) ..................................................... 7

## Statutes

TEX. CODE CRIM. PROC. art. 37.07 ............................................................... 10

## Rules

TEX. R. APP. P. 44.2 ........................................................................................ 14

## Statement of the Case

The appellant was indicted for aggravated robbery. (CR 25). The indictment alleged two prior felony convictions, with one of the felonies having been committed after the conviction for the other became final. (CR 25). A jury found him guilty as charged. (CR 98, 113). The State abandoned one of the enhancement allegations; the jury found the other allegation true and assessed punishment at forty years' confinement and a $5,000 fine. (CR 111). The appellant filed a timely notice of appeal and the trial court certified his right of appeal. (CR 116, 118).

## Statement of Facts

On August 26, 2013, near closing time at a Family Dollar store in west Houston, a man in a hoodie, a black cap, and black-framed glasses approached a store employee, Jaymil Johnson, and asked where the air fresheners were. (3 RR 23, 112; 4 RR 19). The man walked away from Johnson, but rather than buying air fresheners he lingered in the store past closing time. (3 RR 24). When Johnson next saw him, the man brandished a pistol and instructed Johnson to "be cool" and not to make any noise. (3 RR 24-25). The man walked Johnson to another aisle where the other two store employees were, and then took all three

1

employees into the back of the store and had them set their cell phones on a box. (3 RR 26-27; 4 RR 24-25).

The man forced two of the employees into a bathroom, but instructed the store manager, Maheshkumar Desai, to take him to the store's safe. (3 RR 101-04). Desai did as instructed. (3 RR 104-05). After Desai entered the combination, though, he informed the man that the safe had a time delay and would not open for several minutes after the combination was entered. (3 RR 105). The man then began talking to someone on his cell phone, advising that the safe would take 10-15 minutes to open. (3 RR 106).

The man walked Desai to the back of the store, where he noticed that one of the employees' cell phones was no longer sitting on the box. (3 RR 106). The man asked which of them had called the police, but no one admitted to having done so. (3 RR 107). The man then took Desai back to the front of the store where he had him empty the cash registers into a plastic bag. (3 RR 107). The bag also contained some air fresheners. (3 RR 107). The man forced the employees back into the bathroom, and from there they heard the store alarm sound from the opening of the emergency exit in the back of the store. (3 RR 108).

Houston Police Officer James Swank was dispatched to a report of a robbery in progress at the Family Dollar. (3 RR 88-89). He was the second officer to arrive on the scene; when he learned that the first officer was in the front of the store, Swank went to the back. (3 RR 94). He observed a man with a black hat and grey hoodie running away from the store. (3 RR 96, 100). When Swank shone his spotlight on the man, he dropped a cell phone and a plastic Family Dollar bag and immediately sat down. (3 RR 98, 211). The plastic bag contained cash, rolls of coins, and air fresheners. (3 RR 256-57). Next to the bag was a black semiautomatic pistol. (3 RR 257). The man was identified as the appellant. (3 RR 266). The appellant was taken back to the store and Johnson identified him as the robber. (3 RR 274).

## Summary of the Argument

The appellant raises no challenges to his conviction. His sole point relates to evidence of an extraneous robbery that was admitted during the punishment phase. He argues that the evidence was inadmissible because the State did not prove the offense beyond a reasonable doubt. The State believes that the similarities between that robbery, another extraneous robbery, and the charged offense, combined with a tentative

3

eyewitness identification from the complained-of robbery is sufficient to allow a finding, beyond a reasonable doubt, that the appellant committed the complained-of robbery.

## Reply to Point One

**Strong modus-operandi evidence from two other robberies committed by the appellant, combined with a tentative eyewitness identification, are sufficient to allow a rational factfinder to find, beyond a reasonable doubt, that the appellant committed a third robbery that was introduced as an extraneous offense in the punishment phase.**

### I.     Trial Proceedings

#### A. The June 21st Robbery

In the punishment phase, the State called two witnesses to testify about a robbery that occurred on June 21, 2013, at a Family Dollar store in southwest Houston.   Kierra Pipkin was a cashier working the closing shift that night. (7 RR 34). The store closed at 10:00 pm, but the employees had locked the doors early because no one was in the store. (7 RR 36). At 9:40, a man beat on the doors until Pipkin let him in. (7 RR 36). He said he needed worm pills for his dog, but when Pipkin said they did not sell those he asked for the baby wipes. (7 RR 36). Pipkin directed the man to the baby wipes and then walked away to resume cleaning up the store. (7 RR 36).

Sometime later, the man approached Pipkin and brandished a revolver. (7 RR 38-39). The man directed Pipkin and the store's assistant manager, Shondria Laymond, to a different aisle and had them lie on the ground. (7 RR 40). The man asked who the manager was, and when Laymond spoke up he forced her to go open the door and let in a second man. (7 RR 40-41). This second man was taller; he wore a dark cap with a white symbol on it and glasses. (7 RR 41-42, 85-86; State's Ex. 57). The second man was also talking on the phone to someone named "Frank." (7 RR 43). After he entered the store, the second man brandished a semiautomatic pistol. (7 RR 44). It was apparent that the second man was in charge. (7 RR 45).

The second man asked Laymond what the code to the safe was, but Laymond advised that the safe had a timer on it. (7 RR 46). Laymond entered the code into the safe, and while they waited on it to open the second man forced her to empty the cash registers into a plastic store bag. (7 RR 71-73). Once the safe opened, he made Laymond empty it into a store bag as well. (7 RR 73). The man also made her put several boxes of cigarettes in the bags. (7 RR 72-73).

The robbers made the employees lay on the ground again, and then asked where the back door was. (7 RR 73). The second man told

whoever he was talking with on the phone to drive around the back of the store and pick them up. (7 RR 73-74). However, the person on the other end of the phone advised that there were people behind the store, so the robbers left through the front door. (7 RR 74-75). Before leaving, they advised the employees to wait ten minutes before calling the police, or else they would return and shoot them. (7 RR 75).

After the robbery, Laymond was shown a photo lineup; she said that she was 70% sure that the second man in the robbery was the appellant. (7 RR 85-86, 96, 111). At trial, the State introduced security footage of the robbery, as well as a few screenshots taken from that video. (State's Exs. 57, 59).

## B. The Appellant's Request to Strike

After the State admitted all of its evidence regarding the June 21st robbery, defense counsel approached the trial court and asked for the jury to be instructed to disregard it. (7 RR 114-15). The appellant argued that the State's evidence was not sufficient to show, beyond a reasonable doubt, that the appellant committed that robbery, and therefore it was inadmissible in the punishment phase. (7 RR 114-15); *see Thompson v. State*, 4 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.]

6

1999, pet. ref'd) ("The trial court must first determine that the evidence is relevant and that the jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense.").

The State replied that, combined with Laymond's 70% identification, the similarities between the charged offense and the June 21st robbery would allow the jury to find that the appellant committed both crimes. First, the State noted, the robber in both cases seemed to be wearing a "similar hat"[1] in both robberies. (7 RR 115-16). Moreover, the methods used in both robberies were strikingly similar:

> [T]hat it is the Family Dollar, that it was closing time, that he was on the cell phone. He knew about the safe, asking for the manager, not touching anything. And … asking them to go to the back door. Wanting to leave out of the back door, but they just couldn't in this specific situation. And the fact that he was on the phone with another person apparently outside the store.

(7 RR 116-17).

---

[1] The cap recovered from the scene of the charged offense was admitted into evidence as State's Exhibit 28, and it is currently in the custody of the Harris County District Clerk. The State's appellate counsel went to the clerk's office to view the cap. In an appendix to this brief, the State's appellate counsel has included a photograph of the cap placed, for comparison purposes, next to screenshots of the second robber in the June 21st robbery that were admitted as part of State's Exhibit 57. The distinctive kangaroo logo on the cap appears very similar to the logo on the cap worn by the robber. The similarity is even stronger when the cap is compared to the color surveillance video in State's Exhibit 59.

The trial court was initially skeptical of the State's argument and signaled its intention to grant the appellant's motion. (7 RR 119). However, after taking a break the trial court announced that it would deny the appellant's motion but would verbally instruct the jury that it could only consider evidence of the extraneous robbery if it the evidence proved, beyond a reasonable doubt, that the appellant committed it. (7 RR 121-22; *see* CR 106 (providing same instruction in jury chare)).

### C. The June 3rd Robbery

The next witness was Crespin Guerrero, who used to work at a Dollar Tree in Webster. (7 RR 125). On June 3, 2013, Guerrero was the assistant manager working the night shift. (7 RR 127). After locking the store at closing time, Guerrero walked outside the store to put something in his truck. (7 RR 127-28). He heard something behind him, and when he turned around he saw a man holding a gun; the gunman advised Guerrero not to run or he would shoot. (7 RR 128).

The gunman forced Guerrero to unlock the store and the two of them went inside, along with a third person who was with the gunman but who Guerrero did not get a good look at. (7 RR 129-30). Once in the store, the gunman forced Guerrero and the other Dollar Tree employee

8

to go to the store's office and open the safe. (7 RR 132). Guerrero complied; this safe did not have a timer on it so he was able to open it right away. (7 RR 133). The gunman made Guerrero pick up the money and put it into a backpack. (7 RR 133-34). After that, the gunman made Guerrero and the other employee get on the ground, and he sat their cell phones outside of the office. (7 RR 134). The robbers then left. (7 RR 135).

Guerrero later identified the appellant as the gunman. (7 RR 142). During the robbery, the appellant was wearing a gray hoodie, a black cap, and glasses. (7 RR 130). Guerrero said that State's Exhibit 28, the cap recovered from the scene of the charged offense, was similar to the hat the appellant wore during the robbery, and the gun recovered from the scene of the charged offense was similar to the gun the appellant used. (7 RR 140-41).

## II. Standard of Review: A trial court's decision to admit evidence of an extraneous offense in the punishment phase is reviewed only for an abuse of discretion.

In the punishment phase of a trial, the State may offer "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he

9

could be held criminally responsible ..." TEX. CODE CRIM. PROC. art. 37.07 § 3(a). Appellate courts do not review the evidence of an extraneous offense for sufficiency; rather, the question on appeal is whether the trial court abused its discretion in admitting the evidence. *Palomo v. State*, 352 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Though the State can find no case explicitly stating as much, under this standard of review the relevant question on appeal is: "Did the trial court abuse its discretion in determining that the evidence was sufficient?"

III. **Argument**

   A. **The evidence at trial was sufficient to show, beyond a reasonable doubt, that the appellant committed the June 21st robbery.**

The State's argument (at trial and on appeal) involves applying the "modus operandi" doctrine in an uncommon way. Typically, the way that modus operandi arises is that the State will offer evidence of extraneous offenses that were committed in distinctive ways in order to prove that it was the defendant who committed the charged offense. *See, e.g., Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (discussing use of extraneous offenses to prove identity). Here, however, because it is the

10

sufficiency of the evidence to prove the *extraneous* offense that is at issue, the State's argument uses the *charged* offense to prove identity. In either case, the relevant question is whether the crimes are sufficiently distinctive as to allow a conclusion that whoever committed one committed the others. *See Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005). The State believes that the similarities between the June 21st robbery and the other two robberies, combined with Laymond's "70%" identification, support the trial court's determination that a rational factfinder could have concluded that the appellant committed the June 21st robbery. *See Davis v. State*, 180 S.W.3d 277, 285 (Tex. App.—Texarkana 2005, no pet.) (considering modus operandi evidence as part of sufficiency analysis).

The similarities between the robberies are striking:

- The three robberies occurred within a three-month period, making it possible they were all committed by the same people. All three occurred within Harris County.

- All three were of the same type of store: Two Family Dollar Stores and a Dollar General.

- All three robberies occurred at or near closing time.

- All three robberies involved forcing the store manager to open the store's safe and place the money in a bag. In none of the robberies did the robber himself touch the safe or the money.

11

- In all three robberies the relevant robber was described in similar terms: A black man around or slightly shorter than six feet tall with a large build wearing a dark cap and glasses. This robber was always described as wielding a semiautomatic pistol.

- In two of the robberies (June 21st and August 26th) the relevant robber was on a cell phone during the robbery communicating with the presumed getaway driver.

- In two of the robberies (June 3rd and August 26th) the robber made the victims give him their cell phones for a period of time, but he did not steal them.

- In two of the robberies (June 21st and August 26th) the robber took seemingly random items — air fresheners in one instance, and cigarettes and baby wipes in the other.

- In two of the robberies (June 3rd and June 21st) there was an accomplice present who was shorter than the relevant robber and who was taking commands from the relevant robber.

- In the August 26th robbery the robber was described as wearing glasses with black frames. Though it is not apparent in the black-and-white screenshots of State's Exhibit 57, in the color surveillance footage of the June 21st robbery (State's Exhibit 59), the relevant robber clearly is wearing glasses with black frames.

- Additionally, comparing the color footage on State's Exhibit 59 to State's Exhibit 28 (the cap) shows that the relevant robber in the June 21st robbery wore a cap that was identical to the cap recovered from the August 26th robbery. Specifically, on the camera angle looking at the door, where the footage is timestamped 21:49:17 and 21:49:18, the shape of a kangaroo, the same as is on State's Exhibit 28, is plainly visible on the robber's cap. (*See also* Appendix).

In sum, the State's evidence showed that the appellant had a penchant for robbing a certain type of store in a certain way while

12

wearing a certain type of attire. The witnesses to the June 21st robbery described a man similar to the appellant committing a robbery at a similar store as those the appellant like to rob in a manner similar to how the appellant committed his robberies. One of the witnesses to the June 21st robbery (who was not privy to the details of the other robberies) picked out the appellant from a photo lineup and said she was "70%" sure that he was one of the robbers. From the combined logical force of these facts, the trial court was, at least, within the zone of reasonable disagreement to conclude that a rational factfinder could have found the appellant guilty of the June 21st robbery beyond a reasonable doubt. Thus the trial court did not abuse its discretion in declining to instruct the jury to disregard the evidence of that robbery.

### B. Even if the trial court erred, the repeated instructions to the jury to disregard any extraneous offense not proven beyond a reasonable doubt cured the error.

The erroneous admission of an extraneous offense in the punishment phase of a trial is subject to the non-constitutional harm test found in Rule of Appellate Procedure 44.2(b) and should not result in reversal unless it had a substantial or injurious effect on the jury's verdict. *Apolinar v. State*, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st

Dist.] 2003), aff'd, 155 S.W.3d 184 (Tex. Crim. App. 2005); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.); *see* TEX. R. APP. P. 44.2(b).

The jury in this case was twice instructed that it was not to consider the evidence of extraneous offenses unless it believed, beyond a reasonable doubt, that the appellant was criminally responsible for them. (7 RR 121-22; CR 106). One of these instructions came immediately after the State concluded its evidence of the June 21st robbery, which should have made the point abundantly clear to the jury.

Appellate courts presume that juries follow the instructions as given. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). That presumption is rebuttable, but there is no evidence in this case suggesting that the jury disregarded the instructions. Indeed, disregarding the instructions in this case would involve the jury increasing the appellant's sentence for an offense it did not believe he committed, which, even without an instruction, would be passingly strange behavior.

The State's punishment evidence, even excluding the June 21st robbery, was strong enough to warrant the appellant's punishment: The evidence for the June 3rd robbery was quite strong, and the State

admitted evidence of numerous prior convictions, including one for a robbery. (7 RR 202-04 (prosecutor summarizing prior convictions); State's Exs. 40-42; 45-56). Given the general nature of a punishment verdict, the adequate evidence showing that the appellant deserved a harsh punishment, and, most importantly, the trial court's repeated instructions to the jury not to use evidence of the June 21st robbery unless it believed, beyond a reasonable doubt, that the appellant was one of the robbers, there is no reason to believe that the June 21st robbery had a substantial effect on the jury's verdict if they did not believe, beyond a reasonable doubt, that the appellant was one of the robbers. Accordingly, any error by the trial court does not warrant reversal.

## Conclusion

The State respectfully submits that all things are regular and the judgment of the trial court should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
713.755.5826
Texas Bar No. 24071454

## Certificate of Compliance and Service

I certify that, according to Microsoft Word's word counting function, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 3,320 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Mandy Miller
mandy@mandymillerlegal.com

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
Texas Bar No. 24071454

Date: June 30, 2015

# Appendix:

# State's Exhibits 28 & 57





