**AFFIRMED and Opinion Filed December 21, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01123-CR

**HENRY LEE GIVENS, JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-15-72323-H**

## MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Boatright

A jury found Henry Lee Givens guilty of aggravated sexual assault and assessed his punishment at forty years' confinement. He challenges the sufficiency of the evidence supporting that conviction, and he contends the trial court erred by admitting evidence of an extraneous offense. We affirm.

## Background

Shortly after two o'clock on the morning of August 26, 2006, the complainant in this case walked from her cousin's apartment to a gas station two blocks away to buy cigarettes. On her way back to the apartment she was accosted by a man holding a knife. The man used the knife to force the complainant to a remote spot behind nearby businesses. He told her that she would either have sex with him or she would die. He kissed her neck and breast and removed her jeans. Then he

penetrated her vagina with his penis, performed oral sex on her, and penetrated her with his penis a second time before withdrawing to ejaculate. When he had finished, he kept the complainant's jeans and told her to run.

The complainant did run back to her cousin's apartment and told her cousin what had happened. Her cousin called 911. She also called the complainant's mother, who accompanied the complainant to Parkland Hospital where she underwent a sexual assault examination. After she described the attack to the doctor, the doctor took swabs from the complainant's breast and vaginal area. Those swabs became part of the rape kit that was delivered to the police.

The complainant was interviewed by the police at Parkland, but the police were unable to contact her after that night, and they made no further investigation of her case for some time. In 2015, the complainant's rape kit was tested as part of a government initiative. The breast swab matched appellant's DNA profile. (The vaginal swab was not tested because it did not contain seminal fluid.) The police interviewed the complainant again. She was unable to identify appellant from a photo line-up, and, when shown his picture individually, she asserted that she did not know him and had not had consensual sex with him.

Appellant was arrested and tried for the 2006 aggravated sexual assault of the complainant. The jury found him guilty, and he was assessed a sentence of forty years. He appeals that conviction.

**Sufficiency of the Evidence**

We begin with appellant's third issue because, if successful, it would result in rendition of judgment in his favor. Appellant argues that the evidence is insufficient to support his conviction. Specifically, he contends that there is no evidence he caused contact between his sexual organ and the complainant's sexual organ as the indictment alleged.

When the sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Appellant points first to the absence of DNA evidence showing that he had contact with the complainant's sexual organ. He acknowledges that a DNA sample taken from the complainant's breast matched his profile. But a vaginal swab taken during the complainant's sexual exam did not provide such a match, although she testified that her assailant had both penetrated her vagina without a condom and performed oral sex on her. The technician who performed the DNA test in this case testified that no test was performed on the complainant's vaginal swab because it contained no seminal fluid. The absence of seminal fluid was consistent with the complainant's testimony that her assailant had withdrawn his penis before ejaculating. And Detective Brandi Kramer, the lead detective on complainant's case, testified that she did not request additional testing for saliva on the vaginal swab because the results of the breast-swab test had successfully identified the assailant.

Appellant also points to the absence of any trauma or injury to the complainant's genitalia. Dr. Marlene Corton, who performed the complainant's sex assault examination, testified that this was not unusual in her experience. Corton testified that it is unusual, in the case of a sexually active woman, to see trauma after nonconsensual sex unless the assailant used a sharp object to assault the victim. There was no such allegation in this case.

Appellant's objections fail to establish that the evidence is insufficient to support his conviction. Neither DNA evidence nor other physical evidence of trauma is required to support a sexual-assault conviction. *Alvarado v. State*, No. 01-14-00894-CR, 2016 WL 7694355, at *4 (Tex.

App.—Houston [1st Dist.] Dec. 22, 2016, no pet.). The complainant testified in detail concerning the assault. She testified that the same man who kissed her breast assaulted her vaginally, making contact with her sexual organ with both his mouth and his penis without her consent. A conviction for sexual assault is supportable on the uncorroborated testimony of the victim if she informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred. TEX. CRIM. PROC. CODE ANN. § 38.07. The record before us establishes that the complainant informed her cousin, her mother, the police, and medical personnel of the assault the same day it occurred. We defer to the jury's credibility and weight determinations. *Brooks*, 323 S.W.3d at 899. Because the jury implicitly found that the complainant's testimony was credible, we conclude that her testimony alone is sufficient to support appellant's conviction.

A rational jury could have concluded beyond a reasonable doubt that appellant committed an aggravated sexual assault in this case. We overrule his third issue.

**Extraneous Offense Evidence**

In appellant's first and second issues, he challenges the trial court's admission of evidence of a 2011 aggravated sexual assault committed by appellant. The complainant in that 2011 case was a young woman, walking alone at nightfall. She was approached by a man in a truck, who invited the complainant to join him. When she repeatedly refused, the man pulled his truck in front of her, jumped out, and used a knife to force her into the truck. He drove her to his nearby home and forced her at knifepoint to undress. He then kissed her neck and breast, performed oral sex on her, and penetrated her vagina with his penis. He drove her back to the area where he had abducted her, took money from her purse, and told her to get out of the truck. She ran to a nearby convenience store to call the police and subsequently underwent a sexual assault examination at Parkland. The vaginal swab taken during that examination matched appellant's DNA profile.

Appellant eventually pleaded guilty to the 2011 aggravated sexual assault and served a ten-year sentence.

Appellant objected to evidence of the extraneous offense, arguing that it violated both rules 404 and 403 of the Texas Rules of Evidence. We review the admissibility of an extraneous offense for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold it. *Id.*

### Rule 404(b)

Evidence of a crime is not admissible to prove a defendant's character in order to show that, on a particular occasion, the defendant acted in accordance with that character. TEX. R. EVID. 404(b)(1). This evidence may be admissible, however, for another purpose, such as proving the identity of an actor. TEX. R. EVID. 404(b)(2). Evidence of extraneous misconduct may also be admitted to rebut a defensive issue that negates one of the elements of the offense. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). The State offered evidence of the 2011 offense for these reasons, to establish the identity of the 2006 complainant's assailant and to rebut appellant's suggestions that the parties' sexual interaction was consensual.

Appellant first argued that the extraneous-offense evidence was premature when offered, because he had not put forward a defense to which the evidence was responsive. Building on that argument, he contends on appeal that the evidence is irrelevant because neither identity nor lack of consent were ever issues at trial. We disagree.

During voir dire, while stressing to the venire that the State was required to prove precisely what was alleged in the indictment, appellant's counsel proffered several ways the State's proof might vary from the indictment, including, "Maybe it's not a nonconsensual event." Later counsel asked the venire, "Would you hold it against my client if he exercised his right to the [F]ifth

[A]mendment in a sexual assault case where consent was kind of iffy in your mind?" He told the prospective jurors, "You're going to determine what that means to consent." And although appellant contends that he never challenged identity because of the DNA test results, he made points during voir dire that challenged the reliability of that DNA testing. For example, after remarking that DNA is "very credible evidence," counsel stated:

> But there are mistakes that can be made. What if there are mistakes in the gathering of evidence? That was a big deal in the OJ Simpson case. The contamination and things of that nature. There are other police [mis]takes that can be made. You know so they've got to show the chain of custody, that the evidence was not tampered with.

Then during his opening statement, appellant's counsel again challenged the State's evidence of the identity of the assailant:

> You'll be allowed to hear and consider DNA evidence. If the judge allows it in, and you hear about it. It will be in the case, right. And it'll say something very loud. Okay. And my opinion is it will say something very loud, and you'll have to decide what it says. If the DNA evidence doesn't come in, I expect that the new police investigator, and the victim herself, will also tell you that she was unable to identify who had raped her. More than that, she actually identified positively another individual, and tentatively identified a third individual, and never identified my client.

It is true that the complainant was unable to identify her assailant either from photos or at trial. When cross-examining her at trial, appellant's counsel emphasized that fact, asking whether she hadn't in fact identified others in the photo lineup. The complainant asserted that she was not sure of any identification but, when shown the photos, she pointed out men who she believed resembled her assailant.

Finally, in his closing argument, appellant's counsel again suggested that the occurrence was consensual: "There was no trauma whatsoever on her person. We saw a shirt. You know that evidence, that's in evidence, not a nick or cut, nothing, no bruises, no cuts, no tears to the clothing, but we have Mr. Givens allegedly taking – she didn't take her pants off. But allegedly Mr. Givens took them off, while holding a knife." He opined that the complainant's version of the facts was

"unlikely" and "didn't make sense." And then he posited his own version of what had happened between the complainant and appellant:

> What makes sense, a reasonable deduction from the evidence is this little scenario, goes out and she's a 19 year old, she gets a man, they talk about certain – start talking and go over to a private area, and they start something and it stops, it breaks down. She runs home, you know. He started to touch her and kiss her breast, and it falls apart. That's a reasonable deduction from the evidence that we have, the physical evidence, the DNA evidence, what a young girl was probably thinking, or doing that time of morning.

Throughout the trial, appellant challenged the elements of identity and consent. A trial court's 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement if there is evidence supporting that an extraneous offense is relevant to a material, non-propensity issue. *Devoe*, 354 S.W.3d at 469. We conclude that there is evidence that the 2011 offense was relevant to the issues of identity and consent, both of which were material, non-propensity issues.

But appellant argues further that even if the evidence was relevant on the issues of identity and consent, it was insufficient to meet the State's burden on those elements of the offense. "In the context of extraneous offenses, *modus operandi* refers to a defendant's distinctive and idiosyncratic manner of committing criminal acts. *Casey v. State*, 215 S.W.3d 870, 880–81 (Tex. Crim. App. 2007). If the State establishes that the *modus operandi* of the two criminal acts at issue—here, the 2006 offense and the 2011 offense—is "remarkably similar," then the evidence of the extraneous offense can be admissible to prove the crime itself as well as identity or consent. *Id.* at 881. In this case, it is not merely the argument of counsel showing the intrinsic similarities of the two cases. Detective Kramer, who was the lead detective on both offenses, testified to the similarities between them: the offenses occurred within two blocks of each other; both offenses were initiated when the assailant forced the victims, who were walking alone, to go to a secluded place with him by threatening them with a knife; in both offenses the assailant kissed the victim's breasts, performed oral sex on the victims, and then penetrated their sexual organs with his penis,

without consent, and at knifepoint; and after the sexual assault, the assailant took personal property from the victims.

We acknowledge that the 2006 and 2011 assaults were not committed in identical fashion, but "the case law in this jurisdiction does not require extraneous-offense evidence to be completely identical to the charged offense to be admissible to prove identity." *Page v. State*, 213 S.W.3d 332, 338 (Tex. Crim. App. 2006). We conclude the trial court's decision to admit the extraneous offense as evidence of identity and lack of consent was within the zone of reasonable disagreement.

*Rule 403*

In his second issue, appellant argues that even if the 2011 offense evidence was relevant, it should have been excluded because its probative value was outweighed by its unfair prejudice to appellant. Again we disagree.

Appellant argues that the State had no need of the evidence of the 2011 offense because he did not raise any defensive theories that the State needed to rebut and because the State could have relied on the DNA evidence to prove identity. As we discussed above, appellant raised issues of identity and lack of consent throughout the trial. Moreover, because the complainant was not able to identify appellant as her assailant, the State needed evidence on the issue of identity in particular. As appellant himself argues, the DNA evidence from the complainant's breast did not establish contact with her sexual organ. But that DNA evidence did connect appellant to the 2011 sexual assault, in which appellant pleaded guilty to contact with the victim's sexual organ. If the jury believed the offenses were sufficiently similar to show a pattern in their commission, then that pattern included non-consensual contact with the complainant's sexual organ in 2006 as well.

Appellant also contends that proffering evidence of the 2011 offense took "a great deal of time." Undue delay is another basis for excluding relevant testimony. TEX. R. EVID. 403. But the record indicates that all of the testimony from the 2011 complainant, from Detective Kramer, and

–8–

from a police investigator (who testified to a phone call appellant made from jail to his brother) lasted two and one-half hours. And that block of time included the detective's testimony concerning both offenses as well as the investigator's unrelated testimony. We cannot say that presentation of the evidence concerning the 2011 offense caused undue delay of the trial.

We discern no abuse of discretion in the trial court's ruling that evidence of the 2011 offense did not violate rule 403.

*Harm*

Our rules of procedure require that we disregard any non-constitutional error, defect, irregularity, or variance that did not affect appellant's substantial rights. TEX. R. APP. P. 44.2(b). Therefore, even if the trial court erred in admitting evidence of the 2011 offense, we will not reverse the trial court's judgment absent a showing of harm caused by its admission. We do not see such harm in the trial record. We concluded above that the evidence was sufficient for the jury to conclude that appellant committed the aggravated sexual assault based on the complainant's testimony; we did not require evidence of the 2011 offense to reach that conclusion.

In addition, the trial court correctly instructed the jury as to how it could use evidence of the extraneous offense:

> You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider that testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider it in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense alleged against him in the indictment in this case, and for no other purpose.

We generally presume that the jury follows the trial court's instructions in the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). An appellant may refute this presumption, but he must rebut it by pointing to evidence that the jury failed to follow the

instruction. *Id.* Appellant has not identified any such evidence in this case. We cannot say that the admission of evidence of the 2011 assault affected appellant's substantial rights.

We overrule appellant's first and second issues.

**Conclusion**

We affirm the trial court's judgment.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

Do Not Publish
Tex. R. App. P. 47
171123F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HENRY LEE GIVENS, JR., Appellant

No. 05-17-01123-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F-15-72323-H.
Opinion delivered by Justice Boatright.
Justices Stoddart and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 21, 2018