**Opinion issued December 19, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00675-CR

————————————

**MICHAEL FRANCIS GRANT II, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 77105-CR**

---

## MEMORANDUM OPINION

A jury convicted Michael F. Grant, II of aggravated robbery. After finding the enhancement paragraphs true, the jury sentenced him to 75 years' confinement. *See* TEX. PEN. CODE § 29.03. In his first six issues, Grant contends that the trial court erred by overruling his objections pursuant to evidence rules 404(b) and 403 and

allowing the State to present evidence of three extraneous offenses during the guilt-innocence phase of the trial. In his seventh issue, Grant contends that the trial court erred by denying his request to limit the jury's consideration of extraneous offenses to his identity. We reverse and remand for a new trial.

## Background

One afternoon in the summer of 2015, a man described as "white or Hispanic" with "medium height and weight" entered a Sonic Drive-In restaurant in Pearland, Texas carrying a Weed Eater. He was wearing khaki shorts, a long-sleeved white shirt, a baseball cap, and a white rag or t-shirt covering his face below his eyes. Witnesses observed the man enter the employee-only kitchen area with a black gun.

The man pointed his gun at the assistant manager, A. Quintanilla, and other employees, ordered them to give him money from the cash register, and threatened to shoot one of them if they did not comply with his orders. Quintanilla told him that no cash registers are used at Sonic. The man then demanded that she open the safe and counted down from the number ten. Quintanilla quickly led the man to the safe although she did not know the combination to open it. Once he saw the safe, the man pushed Quintanilla out of the way.

Quintanilla and the other employees immediately ran out of the back door to a car owned by the mother of one employee who happened to be at the restaurant eating lunch. They saw the man run through the back door and run toward a nearby

2

grocery store. One of the employees called 911 to report the incident, and then she and the other employees returned to the restaurant to meet the responding officers. While this was happening, a city code enforcement officer, E. Kimberly, was parked in the grocery store's parking lot. He saw a black-colored sedan speeding from the grocery store parking lot. Soon after the car disappeared from his view, Kimberly saw several police cars arrive at the Sonic. Kimberly met with the responding officers and provided them with a partial description of the vehicle he saw leaving the parking lot.

During their investigation, the officers watched the Sonic surveillance video and determined that Grant was the suspect in the aggravated robbery. An officer went to Grant's home and saw a black sedan in the driveway. During a voluntary search of Grant's home, officers recovered a Weed Eater. An officer also searched Grant's car and found two black bags, a pair of shorts, and toy guns. The officer arrested Grant for aggravated robbery.

A grand jury indicted Grant on an aggravated robbery charge. The indictment contained an enhancement paragraph based on a 2001 conviction for aggravated robbery. Grant pleaded not guilty. The State provided Grant with notice of its intent to introduce evidence of other crimes, wrongs, or acts that Grant had committed to establish his identity as the robber.

## Trial Testimony

During the guilt/innocence phase of trial, the State called three witnesses who identified Grant as the robber separate offenses in each of the beauty stores that they worked in. Defense counsel objected to admission of extraneous-offense evidence under Rules of Evidence 403 or 404(b).[1] The trial court overruled the objection and admitted testimony regarding the extraneous offenses.

### Witness testimony of Y. Sandoval

In June 2015, Y. Sandoval worked as a sales associate at Sally Beauty located on Almeda-Genoa Road in Houston, Texas. On the afternoon of June 19, 2015, a man entered the store wearing a t-shirt, a baseball cap, and shorts. When Sandoval asked him if he needed any help, the man declined and told her that he was talking to his wife on his cell phone. After walking around the store for a while, the man approached Sandoval, lifted his shirt, and brandished a gun in his waistband. The man pointed the gun at Sandoval and demanded she open the cash register. Sandoval complied, and the man grabbed about $500.00 from the register. Because the robber did not cover his face, Sandoval could note his appearance.

Next, the man commanded Sandoval to open the safe, but she was unable to do so because she did not have the safe key. At that time, another employee, M. Sanchez, left through the back door, locking it as she escaped. After the robber ran

---

[1] *See* TEX. R. EVID. 403, 404(b).

from the store, Sandoval called 911 and reported the robbery. Later, Sandoval identified Grant as the robber through an in-person lineup.

**Witness testimony of M. Sanchez**

In 2015, M. Sanchez worked as an assistant manager at the same Sally Beauty store. Sanchez testified about two robberies at this location—the June 19 robbery that Sandoval had testified about and a second one.

Sanchez first testified about the June 19 robbery. She observed a man wearing shorts enter the store and walk around for about 45 minutes without making a purchase. She sent an employee to ask him if he needed any assistance and carried her cash register to the back office to reconcile her till. During the robbery, the man asked her for the keys to the safe. Sanchez told him that the cashier in the front had the keys. He took the money from Sanchez's register, placed the money in a black bag, and went to the front of the store. She immediately closed the back office door and ran through a back exit to a nearby store to notify the police of the robbery.

Sanchez testified about a second robbery that occurred during the afternoon of July 16, 2015. On that day, Sanchez and a cashier were working in the store. As Sanchez was stocking one of the lower shelves with supplies, she noticed a man walk into the store with a white towel on his face. The man demanded money from the cashier. He then noticed Sanchez on the floor and told her to get up and open the register. As she was entering her code, he pointed a gun at her and counted down

from the number five. When Sanchez opened the register, the man took the money, placed the money in a black bag, and left the store. Sanchez called the police. Sanchez later identified Grant as the suspect in the second robbery through an in-person lineup. During the Sonic robbery trial, Sanchez testified that the same person had robbed Sally on June 19 and July 16. She said the suspect had the same eyes, body build, voice, and type of walk.

**Witness testimony of G. Gomez**

In July 2015, G. Gomez worked as an associate at Sally Beauty located on West Bay Area Boulevard in Houston, Texas. On the evening of July 9, 2015, Gomez felt a gun graze her hip and heard a man say, "Turn around and go to the safe." Gomez complied. The man was wearing a baseball cap and a bandana covering his mouth. When Gomez could not open the safe, the man led her to the back office and told her to rummage through the drawers to find the safe key. After she could not find the key, the man hurriedly left through the back door. Sometime after Gomez reported the robbery, an officer contacted her to do a lineup. She identified Grant as the suspect through a photo lineup. During the Sonic trial, Gomez testified that she had been able to identify Grant in the photo lineup because he had distinct, recognizable features even though he wore a covering over his face during the Sally Beauty robbery.

During the jury charge conference, defense counsel objected to the proposed charge. He asked the court to limit the extraneous-offense charge to identity and asked to remove "motive, opportunity, intent, preparation, plan, or knowledge" from the charge. Overruling the objection, the trial court gave the jury a limiting instruction for extraneous offenses and included all permitted uses under Rule 404(b).[2] The trial court provided the jury with the following instruction:

> You cannot consider testimony of extraneous offenses for any purposes unless you find and believe beyond a reasonable doubt that the defendant committed any such extraneous offense. Even then you may only consider the same in determining the motive, opportunity, identity, intent, preparation, plan, or knowledge of the defendant; or as the same may relate to the rebuttal of a defensive theory, if any, in connection with the offense alleged against the defendant in the indictment in this case and for no other purpose.

The jury found Grant guilty of aggravated robbery and, after hearing evidence in the punishment phase of the trial, assessed 75 years' confinement. Grant appealed.

## DISCUSSION

In his first six issues, Grant asserts that the trial court erred by admitting extraneous-offense evidence of three Sally Beauty robberies because he did not place his identity at issue.

---

[2] Rule 404(b) precludes a defendant from being tried for his collateral crimes or for having a propensity for criminal conduct. TEX. R. EVID. 404(b); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992) (en banc). Rule 404(b)(2) states, in part, that extraneous-offense "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

## A. Standard of review

Appellate courts review a trial court's determination of the admissibility of extraneous-offense evidence under an abuse-of-discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). A trial court's ruling to admit extraneous-offense evidence will be upheld if it is "within the zone of reasonable disagreement." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). A trial court's ruling on extraneous-offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (en banc)). Furthermore, an evidentiary ruling under any applicable theory of law will be upheld, "even if the trial judge gave the wrong reason for his right ruling." *Id.* (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982)).

### Rule 404(b)

Generally, evidence of a person's character is inadmissible to prove that on a particular occasion the person acted in conformity with the character or trait. TEX. R. EVID. 404(a)(1). Although evidence of a crime, wrong, or other act is not admissible to prove a person's character to show that on a particular occasion the

person acted in accordance with the character, this evidence may be admissible for other purposes, such as proving identity of the accused. TEX. R. EVID. 404(b). "An extraneous offense may be admissible to show identity only when identity is at issue in the case." *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *see Jabari v. State*, 273 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A defendant may place his identity in issue by his opening statement, cross-examination, affirmative evidence, or defensive theory. *See, e.g.*, *Powell v. State*, 63 S.W.3d 435, 439–40 (Tex. Crim. App. 2001) (opening statement); *Page*, 137 S.W.3d at 78 (cross-examination); *Segundo v. State*, 270 S.W.3d 79, 86 (Tex. Crim. App. 2008) (affirmative evidence); *Wintters v. State*, 616 S.W.2d 197, 200 (Tex. Crim. App. 1981) (defensive theory).

## A. The trial court abused its discretion when it overruled Grant's objection to evidence of extraneous offenses

The trial court ruled that the extraneous evidence of the three Sally Beauty robberies was admissible to prove identity. *See* Tex. R. Evid. 404(b)(2) (extraneous offenses admissible if relevant to other matters, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident"). The State introduced, over Grant's objection, extraneous-offense evidence of unadjudicated robberies that occurred in another county to establish Grant's identity as the suspect in the Sonic robbery. We hold that even if Grant

9

placed his identity at issue, the extraneous robberies were not distinctive or similar enough to be probative of the robber's identity.

Under Rule 404(b), the Court applies a two-prong test to determine "whether the evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and whether the probative value of the evidence is substantially outweighed by unfair prejudice." *Mason*, 416 S.W.3d at 740 (citations omitted). The purpose of this test is to ensure that the defendant is tried for the offense charged, and not for any other crimes. *Segundo*, 270 S.W.3d at 87. To establish that an extraneous offense is relevant in proving identity, the record must show common characteristics between the charged crime and the extraneous offense. *Id.* at 88. These characteristics must be so distinctively similar that they constitute a "signature" or show the accused's "distinctive and idiosyncratic manner of committing criminal acts." *Id.*; *Page*, 213 S.W.3d at 336.

Common characteristics that may make extraneous offenses much like the charged offense include, without limitation, "proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Segundo*, 270 S.W.3d at 88 (providing, as an example, "three bank robberies are committed over a four-year period in different cities in which the robber used an antique silver crossbow."). Extraneous-offense evidence need not be completely identical to the charged offense

to be probative. *Page*, 216 S.W.3d at 338. Generic similarities will not constitute a signature because the "signature must be apparent from a comparison of the circumstances in both cases." *Id*. at 336; *Segundo*, 270 S.W.3d at 88.

In our view, the characteristics of the charged crime and the extraneous offenses are too dissimilar to establish a signature. The three extraneous offenses were all robberies of Sally Beauty stores in Harris County. The charged offense was a robbery of a Sonic restaurant in Brazoria County. The testimony regarding the description of the clothing worn by the robber was inconsistent. Sandoval testified that he wore shorts, a light-colored t-shirt, and a baseball cap without anything covering his face. She noticed a tattoo on his calf. Gomez testified that the West Bay Area robber wore a baseball cap and a bandana covering the lower half of his face. Sanchez only described the suspect in the Almeda-Genoa robbery as someone wearing a baseball hat. In the Sonic robbery, Quintanilla testified that the suspect wore khaki shorts, long-sleeved white shirt, a black baseball hat, and a white rag or t-shirt covering his face below his eyes. These are generic descriptions of common, everyday clothing with inconsistent use of a face covering. Moreover, the witnesses testified to generic physical similarities describing their robbers as White or Hispanic with light complexion, medium height, and medium weight. There were additional inconsistencies regarding the use of a black bag or a Weed Eater in the robberies. Nothing about the description of the suspects in these robberies was so

11

"unusual that it is highly likely that each robbery was committed by the same person." *Segundo*, 270 S.W.3d at 88. We conclude that the trial court's decision to admit the three extraneous offenses was not within the zone of reasonable disagreement because the descriptions lacked consistency to establish a signature or identity.

**B.     The admission of the extraneous-offense evidence was harmful**

Finding error in the admission of evidence, however, does not end our analysis. We review the erroneous admission of extraneous-offense or extraneous-bad-act evidence for non-constitutional error under Texas Rule of Appellate Procedure 44.2(b). *See* TEX. R. APP. P. 44.2(b); *Rodriguez v. State*, 546 S.W.3d 843, 860 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Under Rule 44.2(b), we disregard the error unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). But an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). We must examine whether the evidence had significant potential "to lure the factfinder into declaring guilt on a ground

different from proof specific to the offense charged." *Old Chief v. United States,* 519 U.S. 172, 180 (1997).

Extraneous-offense evidence is "inherently prejudicial." *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008). Evidence of three other robberies in a contiguous county necessarily had a palpable effect on the jury. The evidence was a focus of the trial and was highlighted during closing arguments. In its closing argument, the State spent a brief amount of time summarizing its theory of the Sonic robbery, yet a significant amount of time reciting the witness testimony about the Sally Beauty robberies. In describing its strategy to prove the offense charged through extraneous offenses, the State argued:

> Harris County can handle Harris County cases. But Brazoria County needs to handle Brazoria County cases, and the way we do that is to prove identity through Harris County cases.

The prejudicial impact of the extraneous-offense evidence is reinforced when we consider the lengthy sentence of 75 years' confinement for an armed robbery with no injuries. We cannot say, with fair assurance, that the judgment was not substantially swayed by the error in admitting this evidence, given the significance the State placed on it. *See Johnson v. State*, 43 S.W.3d 1, 4 (Tex. (Tex. Crim. App. App. 2001) (discussing substantial-harm standard).

We acknowledge that there was other evidence supporting an inference that Grant committed an aggravated robbery based on the Sonic surveillance video and

13

the partial license plate. This information led the officers to Grant's home, and they found a car matching the partial license plate, the Weed Eater, and toy guns. But, as the United States Supreme Court has noted, our substantial-harm inquiry cannot be merely whether there was enough evidence of guilt to support the judgment of conviction, apart from the error. *Kotteakos*, 328 U.S. at 764–65. Rather, the inquiry is "whether the error itself does, and, if the conclusion is that there is grave doubt, then "the conviction cannot stand." *See Johnson*, 43 S.W.3d at 4 (quoting and applying *Kotteakos*).

Nearly all of the trial was testimony describing the extraneous Sally Beauty robberies. The State adduced significant testimony from the witnesses of the Sally Beauty robberies about how they identified the robber of the Sally Beauty robberies through a photo array or an in-person lineup. The State did not, however, adduce any testimony that these witnesses identified Grant as the robber of the Sonic restaurant based on a review of the Sonic surveillance video. Because we have grave concerns that the admission of extraneous-offense evidence had a significant effect on the outcome of the trial because of the State's emphasis on the evidence and the way it incorporated the other robberies into its trial theme, we conclude the substantial-harm standard is satisfied. For these reasons, we sustain Grant's first six issues.

## Conclusion

Because the trial court abused its discretion in admitting the evidence of the three unadjudicated Sally Beauty robberies and that error was harmful, we reverse the trial court's judgment and remand for a new trial. Given our resolution of the evidentiary issues, we need not reach Grant's seventh issue challenging the jury charge.

<div style="margin-left:50%">

Sarah Beth Landau
Justice

</div>

Panel consists of Justices Lloyd, Goodman, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).