# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00091-CR

---

**Ty Lee Whitfield, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF HAYS COUNTY
### NO. CR-16-0981, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Ty Lee Whitfield of the first-degree felony offense of aggravated robbery. *See* Tex. Penal Code § 29.03. In one point of error, appellant contends that the trial court abused its discretion when it admitted extraneous-acts evidence during the guilt/innocence phase of trial, *see* Tex. R. Evid. 404(b), and that this error was harmful. For the following reasons, we affirm the judgment of conviction.

### BACKGROUND

The jury heard evidence that, on August 2, 2016, John Moore was robbed in an HEB parking lot in Buda, Texas. Around 2:00 p.m. that day, Moore parked his Ford F-150 "club cab" truck away from other vehicles in the parking lot and the store entrance and, when he was unloading his groceries in the back seat on the passenger side of his truck, a man approached him, put a small black handgun into his stomach, and demanded his wallet. After the man had

taken Moore's wallet, the man returned to his vehicle that was parked nearby and drove away. Moore called 9-1-1, and the police responded. Based on surveillance video footage from the store and a nearby gas station and Moore's description of the man's vehicle, the police determined that the vehicle was a black four-door 2010 Dodge Caliber with a temporary dealership license plate that had "CUERO" on the license plate frame. The police identified the vehicle's owner to be Alejandra Zaiontz, with whom appellant had been staying and who recently had reported the vehicle as stolen. On August 19, 2016, the police arrested appellant after finding him in the Dodge Caliber at a Walmart parking lot in San Marcos shortly after midnight. After appellant's arrest, an investigating detective interviewed appellant who told the detective that he had taken the Dodge Caliber from Zaiontz and had it for ten days. The State subsequently indicted appellant for aggravated robbery of Moore.[1]

The State's case against appellant proceeded to a jury trial in February 2019. The State's witnesses were Moore; Casey Lopasky, a Buda Police Department detective who investigated the robbery; a Cuero Dodge dealership employee who sold the Dodge Caliber to Zaiontz in July 2016; Zaiontz's mother; and Patrick Aubry, the San Marcos Police Department officer who arrested appellant on August 19, 2016, after finding him in the Dodge Caliber in the San Marcos Walmart parking lot. Zaiontz's mother confirmed that she knew appellant, testifying that he was a friend who had been "staying there" "at the house in the back" with her daughter, but she could not identify him in court. At the time of trial, Zaiontz was in a nursing home recovering from a stroke and did not testify at trial.

---

[1] The State also indicted appellant for credit card abuse but dropped this charge. *See* Tex. Penal Code § 32.31.

In his testimony, Moore described being robbed at gun point in the HEB parking lot. He testified that his "crew cab" truck required the front doors to be open before the back doors could be opened[2] and that he parked "away" from the entrance to the store and other vehicles so that he could open the truck's doors without "banging somebody." He was unloading his groceries in the back seat when he "turned to get another bag out of the cart, and [the man] was there putting a gun in [his] stomach." He testified that the man "came up and stuck a gun in [his] stomach and said, Give me your wallet." He described the gun as being small and black and further testified that the man asked for his wallet a "second time" while "put[ting] the gun further in [his] stomach" and asked for the PIN number to his ATM card. Moore gave the man his wallet, which included a credit card and ATM card, but he gave a phony number for the PIN. As the man was walking away, he said to Moore that, if Moore did not give him the right number, he knew where Moore lived. Moore described the man who robbed him as being Caucasian, "roughly about 5'9," 5'10," with a roundish face, no special features" and "[a]bout a two-day growth of beard," wearing a gray short-sleeved shirt and shorts, and the man's vehicle as being a "dark-colored sedan" with "new vehicle dealer tags" that said "Cuero" on the frame. Moore also testified that approximately fifteen minutes after the robbery, his credit card was used without permission at a local gas station.

Moore, however, was unable to identify appellant as the man who robbed him. In his testimony, he confirmed that he had identified a different individual who "was close," "about 75 percent" to the man who robbed him in a photo array conducted by law enforcement on August 11, 2016. He also acknowledged that he told the district attorney that the man who

---

[2] Moore explained: "It's a club cab, whereby you have your—the bigger models, all four doors open out. With the club cab, the front—the front doors open out. The back door, you have to open it from the inside."

3

robbed him was younger with more hair than appellant. Moore further testified that he "was looking for tattoos on the outer part of the arms" but did not see "any markings or anything" on the man who robbed him, but the evidence showed that appellant has tattoos on his upper arms, his elbows down to his forearms, and a finger.

Lopasky, the responding officer to the robbery, testified that based on his review of surveillance video footage from the HEB and the gas station where Moore's credit card was used "right after" the robbery occurred, he identified the robber's vehicle as a black four-door Dodge Caliber. Lopasky contacted the Cuero Dodge dealership, and the dealership had sold Zaiontz a 2010 Dodge Caliber that recently had been reported stolen. The employee from the Cuero Dodge dealership testified that she sold the vehicle to Zaiontz in July 2016, that it was the only Dodge Caliber the dealership sold between June 13 and August 31, 2016, and that Zaiontz reported that the vehicle was stolen not long after the sale. The dealership employee also identified the Dodge Caliber by its VIN and a photo of a license plate frame with "CUERO" on it as being from her dealership. She testified that the temporary "paper tags" could be on the vehicle "up to 60 to 90 days."

Aubry, the officer who arrested appellant on August 19, 2016, testified that when he found appellant in the Dodge Caliber in the Walmart parking lot around midnight, appellant appeared to have been sleeping, that the vehicle had been reported stolen, and that the responding officers viewed a small, black handgun "[o]n the driver's side floorboard, protruding out from underneath the driver's seat." In addition to the handgun, other items that the police found inside the vehicle were ammunition, a wallet that contained Zaiontz's driver's license, and a receipt from a hotel in San Marcos for lodging from August 3 to 5, 2016.

4

Over objection and after receiving a contemporaneous limiting instruction from the trial court that the jury could only consider the evidence of an extraneous offense with regard to identity,[3] the jury also heard evidence about a robbery that appellant committed on August 5, 2016, in the parking lot of a Sam's Club in San Antonio (the Bexar County robbery). *See* Tex. R. Evid. 404(b)(2). The State's witnesses who testified about that robbery were the two women who were robbed, a San Antonio Police Department detective who responded to the robbery, a forensic scientist who linked DNA evidence on a cap that fell off appellant during the commission of that offense to appellant, and a sergeant/investigator with the Hays County District Attorney's office who testified about the judgments of conviction in that case.

The evidence concerning that offense showed that "around noontime" on August 5, 2016, appellant took the purses of the two women from the front seat of their Ford F-150 truck in the parking lot and drove away in a four-door Dodge Caliber. The women's truck was an "extended cab" with the front and back doors opening in opposite directions and requiring the front door to be opened before the back door could open. The women parked their truck "a little bit far away from the entrance" and "where all the cars were there." They were

---

[3] The trial court instructed the jury:

Ladies and Gentlemen, the State intends to produce evidence—or present evidence of events outside of this particular allegation; in other words, extraneous offenses. And I need to admonish you-all or instruct you that you can only consider this testimony and evidence if you have a question with regards to the identity of the defendant, as to whether or not he actually committed this offense. And also, you have to, before you can consider the evidence, find beyond a reasonable doubt that the other offenses actually took place. In other words, you have the same burden of proof as to the extraneous offenses as you do to this particular one before you can consider that in your deliberations as to the identity of the perpetrator in this particular matter.

5

finishing unloading their groceries on the driver side of the truck when appellant pulled his vehicle into a parking space close to the truck. Appellant got out, walked to the truck on the passenger side, and took the women's purses from the truck. He then hurried to his vehicle with the women chasing after him. He pushed one of the women "really far." The other woman was able to grab onto his vehicle as he was driving away, but she eventually let go and fell onto the ground in the parking lot, and he continued driving away. One of the women was unable to pick anyone out of a photo array prepared by law enforcement, but she described the man who robbed them as being white with facial hair. She estimated the man's height to be 5'7," and she did not notice any distinctive markings or tattoos on him. The other victim estimated his height to be 5'8," described him as wearing a T-shirt and shorts and having a goatee, and did not recall seeing any tattoos. Both women described appellant's vehicle as a black four-door Dodge. The police also found one of the women's purses among the items in Zaiontz's Dodge Caliber on August 19, 2016.

The State's exhibits at trial included Moore's 9-1-1 call. During the call, Moore described the four-door vehicle and the man who robbed him as white with facial growth and wearing a gray T-shirt. Other exhibits were the surveillance video footage of both robberies; a recording of Lopasky's interview of appellant after he was arrested; photographs of Zaiontz's Dodge Caliber and items that the police found in the vehicle, including the black handgun, ammunition, and a holster; physical evidence, including the handgun and the cap that fell off appellant during the Bexar County robbery; and the judgments and indictment from the Bexar County robbery. The judgments reflect that appellant pleaded nolo contendere to two counts of aggravated robbery with deadly weapon findings based on the indictment allegation that

6

appellant used a motor vehicle that "in the manner of its use and intended use was capable of causing death and serious bodily injury."

The video footage captures both robberies from a distance. The images of the individuals involved are blurry. As to the robbery of Moore, the video captures a black four-door vehicle being driven into the parking lot, circling around, and then parking in a nearby space as Moore was unloading his groceries on his truck's passenger side with both doors on that side open. Moore's truck was parked off to the side and away from the store's entrance. The man who robbed Moore is seen leaving his vehicle and walking into the space between the front and back doors on the passenger side of Moore's truck, staying there for a short time, and then walking back to his vehicle and driving away. Because the doors on the passenger side of the truck were open, the robbery itself is not seen on the video.

In the Bexar County robbery, the video captures the same type of black four-door vehicle being driven into the parking lot, circling around, and then parking in a nearby space to the women's truck, which was parked off to the side of the parking lot and away from the store's entrance. The man who committed the robbery is seen leaving his vehicle, walking to the truck on the passenger side, and then hurriedly returning to his vehicle. The video also captures the women following him to his vehicle, the man pushing one of the women and then driving away with the other woman holding on at the driver side window before falling onto the ground in the parking lot with the man continuing to drive away.

In its jury charge, the trial court included the following instruction as to evidence of other crimes or bad acts by appellant:

During the trial, you heard evidence that the defendant may have committed wrongful or criminal acts not charged in the indictment. The state

7

offered the evidence as proof of the defendant's identity. You are not to consider evidence of such a wrongful act at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it.

Even if you do find that the defendant committed a wrongful act, you may consider this evidence only for the limited purposes I have described. To consider this evidence for any other purpose would be improper.

The jury found appellant guilty, and punishment was to the trial court. After hearing additional evidence, the trial court assessed punishment at confinement of fifty years in the Texas Department of Criminal Justice (Institutional Division). This appeal followed.

## ANALYSIS

In his sole point of error, appellant complains about the admission of the evidence regarding the Bexar County robbery during the guilt/innocence phase of trial. Appellant contends that the trial court abused its discretion in allowing this extraneous-offense evidence because the robberies were not "uniquely similar to constitute [appellant]'s 'signature'"; that, even if they were, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice; and that the admission of the evidence was harmful error.

**Rules of Evidence 403 and 404(b)**

Appellant's point of error concerns Texas Rules of Evidence 403 and 404(b). Rule 403 provides that a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Tex. R. Evid. 403; *see also id.* R. 401 (stating test for relevant evidence). And Rule 404(b) provides that extraneous-offense evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* R. 404(b)(1).

8

Extraneous-offense evidence, however, "may be admissible for another purpose," such as proving "identity." *Id*. For extraneous-offense evidence to be admissible under both Rules 403 and 404(b), it must satisfy a two-pronged test: (1) it must be relevant to a fact of consequence in the case aside from its tendency to show that the defendant acted in conformity with character, and (2) its probative value must not be substantially outweighed by unfair prejudice. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006).

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Id.* (citing *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005)). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* "A trial court's 404(b) ruling admitting evidence is generally within this zone if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Id.* (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

We also review trial court rulings on Rule 403 grounds for abuse of discretion, *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013), affording trial courts a high level of deference regarding admissibility, *see Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd). Though not exclusive, the factors that courts balance when performing a Rule 403 analysis are:

(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence.

*Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019) (citing *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006)); *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (stating factors that courts balance when performing Rule 403 analysis); *see also Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (explaining that "probative value" refers to how strongly evidence makes existence of "fact of consequence" "more or less probable" and to how much proponent needs evidence and that "unfair prejudice" refers to how likely it is that evidence might result in decision made on "improper basis," including "an emotional one" (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007))). All evidence is "likely to be prejudicial to one party or the other." *Davis*, 329 S.W.3d at 806. "It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable." *Id.* (citing *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997)).

A trial court's ruling to admit evidence will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). Further, we will not reverse a trial court's erroneous admission of evidence unless the error affected the appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Sandoval v. State*, 409 S.W.3d 259, 287 (Tex. App.—Austin 2013, no pet.) (stating that "erroneous admission of evidence is non-constitutional error" and that "[n]on-constitutional error requires reversal only if it affects the substantial rights of the accused").

Guided by these standards, we turn to appellant's point of error.

**Bexar County Robbery**

In this case, the State offered the evidence regarding the Bexar County robbery to prove identity. For evidence of an extraneous offense to be admissible to prove identity "by comparing common characteristics," the extraneous offense "must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Page*, 213 S.W.3d at 336 (quoting *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005)). "[T]he theory of relevancy is usually that of *modus operandi* in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute a 'signature.'" *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008). "No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Id.* "Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi* of a single individual." *Id.*

Appellant contends that the trial court abused its discretion by admitting the evidence regarding the Bexar County robbery because it "only served to prove character in conformity, that [appellant] is a known robber, so therefore he must have committed the robbery at hand." As support for this argument, appellant cites the State's closing statements to the jury that:

We know it's him because he has a schtick. This is a thing he does. He's practiced it. He's gotten it down. He did it once, and he's like, you know, [i]t works. So he goes and does it again. You can consider that when you make your decision, that this is something that's happened more than once, and that we're certain that he's the one that did it in San Antonio.

Appellant asks this Court to conclude that the Bexar County robbery "was simply a generic and fungible crime" that was "not indicative of a 'signature,' to permissibly show identity under 404(b)." Appellant argues that "when comparing and contrasting the two aggravated robberies, there is nothing that can be gleaned to conclude that the two offenses are so uniquely similar to constitute [appellant]'s signature." As support for this argument, appellant focuses on discrepancies in the evidence about the vehicle that was involved in the respective robberies, the victims' "extremely generic" description of the man who robbed them "especially when taking into account that [appellant] does actually have distinctive tattoos on his body to identify him," and other differences between the robberies, such as: (i) the location of where they occurred—in different cities; (ii) the time of when they occurred—on different days; (iii) the victims—the robbery in this case was against a man compared with the Bexar County robbery against two women; and (iv) the deadly weapon in this case was a handgun compared with the Bexar County robbery in which a vehicle was the deadly weapon.

Although the robberies were committed in two different cities—Buda and San Antonio, the cities are in the same geographic area, and the robberies were aggravated and involved the use of deadly weapons. The robberies also were committed within a few days of each other with the same type of vehicle and around the same time of day—in broad daylight—in a similar type of parking lot to a store, and the victims were robbed when they were in the process of unloading their purchased goods into their trucks with cabs that required the front and

back doors to be opened. *See Segundo*, 270 S.W.3d at 88 (explaining that "no rigid rules dictate what constitutes sufficient similarities" and that "common characteristics may be proximity in time and place" and "mode of commission of the crimes"). The victims all described the man as being white with facial hair; one of the women testified that the man was wearing a T-shirt and shorts; in the 9-1-1 call, Moore described the man as wearing a T-shirt, and in his testimony, Moore described the man as wearing a short-sleeve shirt and shorts; and the women provided estimates of the man's height that were within a few inches of Moore's estimate. *See id.* (explaining that "common characteristics" may include "the person's dress, or any other elements which mark both crimes as having been committed by the same person"). The video recordings capturing the two robberies also show: (i) the same type of black four-door vehicle being driven into the respective parking lots, circling around, and then parking in a nearby space to the victims' trucks with cabs; (ii) a similar manner of the robber leaving and returning to his vehicle; and (iii) the robbing of victims who chose parking spaces that were in the periphery of the respective stores' parking lots (and surveillance cameras). Given these similarities, we cannot conclude that the trial court abused its discretion when it determined that the evidence of the Bexar County robbery was relevant to the fact of identity. *See id.*; *Page*, 213 S.W.3d at 336.

Appellant also argues that the danger of unfair prejudice substantially outweighed the probative value of the evidence. *See* Tex. R. Evid. 403. Appellant argues that the "only logical link" between the offenses was that the "same vehicle, or a very similar vehicle, was involved in both cases" and cites: (i) the "great deal of time" that the State spent during trial to prove "an inherently inflammatory extraneous offense: aggravated robbery by two female victims who were very much affected by the offense" when appellant continued to drive off in his vehicle after one of the victims fell onto the ground; (ii) the State's emphasis on the Bexar

13

County robbery and the judgments from that offense in closing arguments; and (iii) the State's other probative evidence to prove identity in this case. Appellant cites the evidence that he was found in the stolen Dodge Caliber that was used during the robbery at issue, the receipt that was found in the vehicle from the hotel room in San Marcos from August 3 to 5, "putting [him] in the area during the time frame of the aggravated robbery"; and other items found in the vehicle, including Zaiontz's wallet and the handgun that matched Moore's description of the handgun used in the robbery against him.

Appellant further argues that this Court should consider the admission of the judgments in the Bexar County robbery in a separate analysis under Rule 403 and that it was prejudicial and unnecessary for the jury to know that he pled to fifteen years in prison in the Bexar County case when the State had several witnesses to prove that he committed the Bexar County robbery. He argues that "the Court cannot objectively hold that the probative value of the certified judgment confirming [appellant]'s guilt and fifteen (15) year prison sentence was not substantially outweighed by the danger of unfair prejudice" and that he "had zero chance of winning his case on the defensive issue that [appellant] could not be positively identified when the jury was provided with affirmative evidence confirming that [appellant] pled guilty to the Bexar County case, and was convicted and sentenced to prison for committing the offense."[4]

Although the State called five witnesses and spent a significant amount of time on the Bexar County robbery, the testimony from the women describing the robbery and the sergeant about the judgments was not extensive, the State did not mention the length of the

---

[4] Appellant also objects to the admission of the judgments because they contain his "SID" number and the jury may have been aware that an SID number can connote a prior criminal history. He, however, did not raise this argument with the trial court and has not preserved it for our review. *See* Tex. R. App. P. 33.1(a).

14

prison sentence in its closing, and the testimony from the detective who responded to the robbery and the forensic scientist concerned the investigation and procedures employed to link appellant to the DNA evidence found on the cap, which by its nature is time-consuming and not emotional. *See Segundo*, 270 S.W.3d at 90 (observing that identification of DNA profile that was matched with appellant "require[d] a long list of witnesses and a slow plod through the pertinent scientific procedures" and that evidence of "unemotional science of DNA profiling and identification" "was not evidence that might lead the jury into making an irrational or emotional decision" but "was calculated to result in a rational decision based upon modern science, genetic fingerprinting, and probabilities").

Further, the State's need for the evidence and the probative value of the evidence was high. *See Colone*, 573 S.W.3d at 266. In this case, the determinative contested fact was the identity of the man who robbed Moore, and Moore was unable to identify appellant. In his testimony, Moore confirmed that, in a photo array, he had identified a different individual whom "was close," "about 75 percent" to the man who robbed him and that he had told the district attorney that he thought the man who robbed him was younger with more hair than appellant. Moore also did not see tattoos or other markings on appellant despite looking for them, but appellant had them. And, as described above, the evidence showed that there were sufficient "common characteristics" "to mark both crimes as being committed by the same person," *see Segundo*, 270 S.W.3d at 88, and that appellant had committed the Bexar County robbery.

Balancing the factors, we cannot conclude that the trial court abused its discretion in admitting the evidence of the Bexar County robbery including the judgments for the limited purpose of identity. *See Devoe*, 354 S.W.3d at 469; *see also Colone*, 573 S.W.3d at 266. On this basis, we overrule appellant's point of error.

**CONCLUSION**

Having overruled appellant's point of error, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   February 10, 2021

Do Not Publish