

# IN THE
# TENTH COURT OF APPEALS

### No. 10-23-00146-CR

**QUEST AL'JAVAUGHN JONES,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court**
**McLennan County, Texas**
**Trial Court No. 2019-516-C1**

# O P I N I O N

On February 1, 2024, we issued an opinion, concurring opinion, and judgment in this cause. We grant Appellant's motion for rehearing. We vacate and withdraw our opinion and the concurring opinion, and withdraw our judgment, dated February 1, 2024. We issue this opinion and accompanying judgment in its place.

Appellant, Quest Al'Javaughn Jones, was convicted of murdering Sherrell Carter and received a sixty-year prison sentence. *See* TEX. PENAL CODE ANN. § 19.02. In three

issues on appeal, Jones contends that: (1) the trial court abused its discretion by admitting testimony about a telephone call made by Jones while he was in jail; (2) the trial court abused its discretion by permitting testimony during the guilt-innocence phase of trial that Jones was in a gang; and (3) the trial court erred by assessing $3,000 for court-appointed investigator fees in the judgment. We affirm.

**The Jail Telephone Call**

In his first issue, Jones asserts that the trial court abused its discretion by admitting testimony about a telephone call Jones made while incarcerated in the McLennan County Jail, which contained a threat that the same thing that happened to Carter, the victim in this case, would happen to Lacreshia Jackson, the mother of Jones's two oldest children.

STANDARD OF REVIEW

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344. "Furthermore, if the trial court's evidentiary ruling is

correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *Id.*

TEXAS RULE OF EVIDENCE 404(B)

Texas Rule of Evidence 404(b) expressly provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant in order to show he acted in conformity therewith. TEX. R. EVID. 404(b). This rule codifies the common-law principles that a defendant should be tried only for the offense for which he is charged and not for being a criminal generally. *See Rogers v. State*, 853 S.W.2d 32, n.3 (Tex. Crim. App. 1993); *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that a defendant is generally to be tried only for the offense charged, not for any other crimes).

Extraneous-offense evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). The list of examples in Rule 404(b) is not exhaustive. *See Prible*, 175 S.W.3d at 731. "Whether extraneous[-]offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's Rule 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant

to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Here, Jones's defensive theory was that he did not kill Carter, but rather an intruder broke into the house and shot Carter and attempted to shoot him. In other words, Jones put identity at issue. To rebut Jones's defensive theory, the State called Jackson to testify about her prior relationship with Jones, as well as a telephone call she received from Jones after Jones had been arrested for this offense. Jackson described the telephone call, and the State presented a recording of the telephone call for admission into evidence. Jones objected to Jackson's testimony and the admission of the recording of the telephone call under Texas Rules of Evidence 403 and 404(b). The trial court overruled Jones's objections and admitted the testimony and the recording of the telephone call into evidence. The recording of the telephone call, which contained a threat made by Jones to Jackson that the same thing that happened to Carter would happen to Jackson, was played for the jury.

An extraneous offense may be admissible to show identity when identity is at issue in the case, or when the defense cross examines witnesses or alleges that someone else committed the crime. *See Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). The threat made in the telephone call demonstrated Jones's knowledge about what had happened to Carter and served as some evidence rebutting Jones's defensive theory that someone else murdered Carter.

*See* TEX. R. EVID. 404(b). Because the complained-of extraneous-offense evidence was admissible for multiple proper purposes, we conclude that the evidence was relevant for more than just character conformity. *See id.*

TEXAS RULE OF EVIDENCE 403

Next, we address Jones's Rule 403 argument. Evidence, though relevant, can nonetheless be excluded when its probative value is substantially outweighed by the danger of unfair prejudice. *See id.* at R. 403. Once a trial court determines that extraneous-offense evidence is admissible under Rule 404(b), the trial court must, on proper objection by the opponent of the evidence, weigh the probative value of the evidence against its potential for unfair prejudice. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see* TEX. R. EVID. 403. Rule 403 favors admitting relevant evidence, and the presumption is that relevant evidence will be more probative than unfairly prejudicial. *Montgomery*, 810 S.W.2d at 389. Unfair prejudice does not mean the evidence injures the opponent's case—"the central point of offering evidence." *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). "Rather[,] it refers to 'an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)).

Although not limited to the following enumerated factors, courts should balance the following under a Rule 403 analysis: (1) the probative value of the evidence; (2) the potential for the evidence to impress the jury in some irrational, yet indelible way; (3) the

time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible*, 175 S.W.3d at 733. The trial court is presumed to have conducted a proper balancing test if it overrules a Rule 403 objection, regardless of whether it conducted the test on the record. *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).

As stated earlier, Jones challenged the identity element of the charged offense. The State needed the complained-of extraneous-offense evidence because it was probative on the issue of identity, and because it rebutted Jones's defensive theory. *See Moses*, 105 S.W.3d at 626 (noting that rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted); *see also Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005) (stating that extraneous offenses are admissible to rebut theories raised by testimony of a defense witness during direct examination or a State's witness during cross-examination). This is especially true considering there was no eyewitness to the shooting other than Jones. The record shows that very little time was spent on developing the complained-of extraneous-offense evidence, and there is nothing in the record demonstrating that this evidence impressed the jury in some irrational, yet indelible, way. Thus, we cannot say that the extraneous-offense evidence confused, distracted, or caused the jury to give the evidence undue weight.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v.*

*State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the complained-of extraneous-offense evidence and its probative value. *See id.*; *see also Conner*, 67 S.W.3d at 202. Accordingly, we cannot conclude that the trial court abused its discretion by admitting this evidence over Jones's Rule 403 and 404(b) objections. *See* TEX. R. EVID. 403, 404(b); *see also De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731. We overrule Jones's first issue.

## Gang Testimony

In his second issue, Jones argues that the trial court abused its discretion by allowing Tydrick Busby, Carter's cousin, to testify that Jones was in a gang.

On appeal, Jones asserts that this testimony should have been excluded because it is violative of Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b). In our original opinion, we held that Jones failed to preserve his Rule 404(b) claim for our review because he made a relevancy objection – not a Rule 404(b) objection – at trial. *See* TEX. R. APP. P. 33.1(a)(1); *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999) (explaining that a relevancy objection at trial "does not preserve error concerning a Rule 404 extraneous offense claim."). Jones filed his Motion for Rehearing on this issue, pointing to the trial court's *sua sponte* Rule 404(b) limiting instruction that accompanied its ruling on the admissibility of the gang evidence. He claims that the trial court's limiting instruction is

proof that the trial court understood his objection as a Rule 404(b) objection, thus preserving the claim for appellate review.

At trial, Busby was asked to describe the relationship between Jones and Carter. Busby responded that he "didn't like it." When asked why he did not like the relationship, Busby noted, "Because he was doing too much. He was in gangs, very hostile." The following relevant exchange occurred regarding the gang testimony:

> [Defense Counsel]: Judge, at this time, I would object to that testimony as far as being relevant…
>
> The Court: …What's your objection?
>
> [Defense Counsel]: Judge, I would object to the relevance of that type of information.
>
> [The State]: Judge, it's in our notice under 404(b) of his gang affiliation.
>
> [Defense Counsel]: Judge, whether something is in a notice, doesn't automatically make anything true. Nor does it make it relevant. Nor does it make it admissible. Those predicates have to be laid, Judge. They were not. It is not relevant to this case. There's no basis for that type of testimony at this point.
>
> [The State]: Judge, I think it is relevant. It goes to why Mr. Busby did not like this relationship. It goes to what he knew about it, and the - - the way that this relationship was going before the death.
>
> [Defense Counsel]: Any type of gang affiliation, if any, has nothing to do with the relationship. That hasn't been laid. That hasn't been tied together. That would be external, at best, from the relationship. If we're talking about relationship testimony, if we're talking about state of mind or plan or these other things that the State may offer, things with respect to the relationship, that's different than what just came out.
>
> [The State]: I think it goes directly to state of mind.

[Defense Counsel]: There's nothing to do with the state of mind of - - of the participants in that relationship, Judge.

The Court: What relationship are we talking about?

[The State]: Talking about the relationship between [Jones] and [Carter] and how Mr. Busby describes it and why he didn't like it.

[Defense Counsel]: Then describe the relationship. This does not go to the relationship.

The Court: Overruled. Ladies and gentlemen, any information that's being elicited in this line of questioning is for - - can be used for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or lack of accident.

It is unclear whether those involved in this discussion had the same understanding of exactly what objection was made by defense counsel. *See* TEX. CODE CRIM. PRO. ANN. art. 38.36(a) (permitting testimony of relevant facts and circumstances surrounding the relationship between the accused and the deceased in a murder prosecution, including the condition of the mind of the accused at the time of the offense); *See* TEX. R. EVID. 404(b) (regarding admission of evidence of extraneous offenses, wrongs, and other bad acts for purposes other than character conformity). Regardless, even if we construe Jones's objection to the gang testimony as a Rule 404(b) objection, and assuming without deciding that the admission of the evidence was error, we find that Jones was not harmed by the admission of the testimony about his alleged involvement in gangs.

The erroneous admission of evidence is generally non-constitutional error governed by Texas Rule of Appellate Procedure 44.2(b). *See Gonzales v. State*, 544 S.W.3d

363, 373 (Tex. Crim. App. 2018); TEX. R. APP. P. 44.2(b). Under Rule 44.2(b), we disregard all non-constitutional errors that do not have a substantial and injurious effect or influence in determining the jury's verdict. *See Id.*; *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In conducting our harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.* at 577-78.

Busby did not elaborate on his testimony that Jones was allegedly involved in gangs. His brief statement was the sole testimony about Jones's potential gang involvement. The State did not mention gang affiliation in voir dire or in its closing arguments, and the guilt-innocence jury charge contained a Rule 404(b) limiting instruction.

The State's theory of the case centered around how Jones continually adapted his version of what occurred the night of the murder to account for new evidence that conflicted with his prior statements. The State summarized its position in closing argument that Jones's "[s]tories don't match the scene." For example, blood and gunshot residue were found on Jones's grey jacket, which he admitted he was wearing the night

of the murder and was found underneath a fallen television in the room where Carter was killed. The State argued that the locations of the blood and gunshot residue on the jacket contradicted Jones's statements that he had not been in the room when the shots were fired or entered the room where Carter was murdered. Jones also had gunshot residue on his hands. More gunshot residue was found on a welcome mat where Jones wiped his bloody hands the night of the murder. He told law enforcement that he had not fired a gun the night of the murder. When Jones was reminded about the test that was done on his hands to detect gunshot residue, Jones then explained its presence by claiming that he had held a gun the night before the murder when he was with his cousins.

Additionally, the jury heard evidence that Jones had threatened Carter with violence on prior occasions and that Carter was in the process of ending her relationship with Jones when she was killed. Jackson had stopped accepting Jones's jail phone calls and distanced herself from their relationship when Jones made his threatening phone call to her, in which he indicated Jackson would suffer a fate similar to Carter's. Jones's former coworker testified that Jones tried to hire him to murder Carter just months before Carter's death. Additional evidence emphasized by the State included: the fact that Jones did not call 9-1-1 even though there were multiple cell phones located on the property; deleted phone calls and text messages on the night of the murder from a phone linked to Jones; Jones's inability to describe the gun allegedly pointed at him by an unknown

intruder in the hallway after Carter was murdered, even though he could recall other details such as the specific brand of clothing the intruder wore; the fact that none of Jones's three children, who were present in the home at the time of the murder, corroborated Jones's story that an intruder was in the home that night; location data from Jones's cell phone records that was inconsistent with his statements to law enforcement; and, Jones's bloody fingerprint and shoe prints in the room where Carter was killed.

Considering the record as a whole, we conclude that even if the trial court erred by admitting the evidence of Jones's possible affiliation with a gang, such error was harmless. Accordingly, we overrule Jones's second issue.

**Court-Appointed Investigator Fees**

In his third issue, Jones complains that $3,000 of fees for a court-appointed investigator are improperly assessed against him in the judgment as court costs.

Here, the investigator fees are not assessed against Jones in the judgment at all – those fees are included in a bill of costs generated by the district clerk's office. Therefore, if there is any error with regard to the assessment of the investigator fees, the error is not with the trial court's judgment; rather it is solely due to the district clerk's actions. At the appropriate time, Jones can address with the trial court any attempt by an entity to collect what is not owed as determined by the trial court's judgment due to the clerk's actions. If the trial court fails to fix the errors of the clerk, then Jones can appeal that trial court error to this Court in a proper manner, on a proper record, and at the proper time.

Because the investigator's fees are not assessed as court costs in the trial court's judgment, we overrule Jones's third issue on appeal.

## Conclusion

Having overruled all of Jones's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed April 18, 2024
Publish
[CR25]

